### E. G. SMITH v. THE STATE.
#### *No. 485.   Decided March 26.*

1. **Embezzlement from an Incorporated Company—Indictment.**—An indictment which charges embezzlement of funds of an incorporated company, to be sufficient, need not further allege the charter or act of incorporation, nor that the company was incorporated under the laws of any State or foreign power.

2. **Same—Allegation and Proof as to Want of Consent.**—Upon a trial for embezzlement by an express agent of the funds of an incorporated company, where the indictment charged that the money was taken without the consent of the company, *Held,* that the proof was sufficient which showed a want of consent of an agent who had direct supervision of the office at which the money was received by the company, and it was not necessary to further prove want of consent by the president or the secretary of the company.

3. **Same—Admissions and Confessions Tantamount to Proof of Want of Consent, When.**—On a trial for embezzlement by an express agent, his admissions and confessions that he had taken the money, and had lost it at poker, *Held,* tantamount to an admission that he had used the money without the consent of the company.

4. **Same—Charge—Circumstantial Evidence.**—On a trial for embezzlement, where defendant had confessed to taking the money, and the court charged the jury on circumstantial evidence, *Held,* defendant had no ground of complaint in this matter, because the charge was more liberal than he was entitled to.

5. **Same—Bond of Indemnity—Effect of.**—On a trial for embezzlement by an agent of an express company, where he was permitted to introduce proof, that at the time of his appointment he had been required to give, and had executed, an indemnity bond to the company for any losses which might be occasioned by his defalcations, *Held,* that such bond had nothing to do with the case, and that the repayment of the money by the obligors on said bond furnished defendant no immunity from criminal liability, and that it would be a monstrous doctrine, that on account of such bond a party could steal his company's money and go unwhipped of justice.

6. **Same—Fraudulent Intent—Evidence of Want of Concealment—Confession.**—On a trial for embezzlement, a fraudulent intent is sufficiently shown where it appears that defendant secretly took the money, and did not confess to the

taking until he was found out and charged with it; and that a mere want of concealment, had such been the case, and confession that he had taken the money, when taxed with it, could not and did not wipe out the stain of embezzlement.

APPEAL from the Criminal District Court of Dallas. Tried below before Hon. CHARLES F. CLINT.

This appeal is from a conviction for embezzlement, the punishment being assessed at three years' imprisonment in the penitentiary.

The charging part of the indictment is as follows: "That one E. G. Smith, on the 28th day of November, in the year of our Lord one thousand eight hundred and ninety-three, with force and arms, in the county and State aforesaid, was the agent of an incorporated company, to wit: the Pacific Express Company; and the said E. G. Smith did then and there fraudulently embezzle, misapply, and convert to his own use, without the consent of said incorporated company, certain money, corporeal personal property, belonging to said incorporated company, to wit, eight hundred and sixty-five dollars in money, of the value of eight hundred and sixty-five dollars; which said money had come into the possession and was under the care of the said E. G. Smith, by virtue of his said agency, contrary," etc.

Defendant moved to quash the indictment for the following reasons, viz: "1. Because said indictment does not set out with sufficient certainty and distinctness the incorporation of the Pacific Express Company, in this: the pleader fails to allege and plead the charter or act of incorporation of this company, and fails to allege the State under whose laws the same was incorporated, and fails to allege the same was duly incorporated under the laws of any State or foreign power; and because it fails to state the date and manner of incorporation, and fails to set out the charter of said incorporation at length, but on the other hand states only the conclusion of the pleader that the same is incorporated, without averring any facts to support said conclusion; and because the pleader fails to allege (if the same be a foreign corporation), that the same has procured a permit from the Secretary of this State to transact business within this State. 2. Because the indictment fails to allege the kind and quality of the money alleged to have been embezzled; and because it fails to allege whether the said money was currency or coined money of the United States; and because the same fails to allege that the same was lawful money of the United States of America."

This motion to quash was overruled.

The evidence, as shown by the statement of facts, is as follows:

L. S. Garrison, for the State, testified as follows: "I am the agent of the Pacific Express Company in Dallas, Texas, and am in charge of the office at Dallas, Texas. Have been the agent at Dallas, Texas, and in charge of said office for several years. The Pacific Express Company is a corporation incorporated under the laws of the State of Nebraska, with its principal office at Omaha, Nebraska, and its presi-

dent, secretary, and treasurer living in Omaha, Nebraska. Mr. E. G. Smith, the defendant, had been money clerk in the office at Dallas for the year next before the 28th day of November, 1893, and on that date. On or about the 6th day of December, 1893, our way-bill clerk's wife became sick, and it was necessary for me to put another man in his place to relieve him for a few days. In order to do this, as Mr. Smith, the defendant, was the only man qualified to fill the position, I had him checked up in order to put a man in his place, and he to take the way-bill clerk's place. Mr. Chace, our bookkeeper, checked up the books. Mr. W. W. Aulick, who lives near Reinhardt, in this county, came in and asked the cause of the delay in the transmission of $826, which he had delivered to the company on or about the —— day of November, 1893, to be transmitted to D. W. McCoy, at Kerrville, Texas. He showed me his receipts for the money, and stated that Mr. McCoy, at Kerrville, had failed to receive the money there, and was writing him concerning it. I at once sent out tracers for the money, and ascertained from the office at Kerrville that the money had never been received there, nor could I find when it had left the Dallas office. I then sent for Smith, who had signed the receipt Aulick had, in the name of the company (which as money clerk it was his duty to do), and asked him where that money was. He then admitted that he had taken it and used it. I asked him what he had done with it. He said he had lost it at poker. I told him that this was bad. He said, 'Yes, he had been rolling it a little too high.' He asked me to give him a chance to replace it. I told him to go out and see what he could do. His salary was $75 per month. This money belonged to the Pacific Express Company, and was of the value of $826, or rather it was in charge and possession of the company, to be transmitted to Kerrville, Texas. Smith used the money without my consent. He came in possession of it by virtue of his agency, that is his duties as money clerk, on the 28th day of November, 1893, in Dallas County, Texas. The company made the amount good and paid to Mr. McCoy, at Kerrville, the sum of $826. I had him arrested that evening." [The receipts were here introduced to show that the defendant had received the money from one Mr. Aulick, for the purpose of transmitting it to Kerrville, Texas. The money had been received about ten days before he was arrested.]

Cross-examination: "I am the agent of the Pacific Express Company at Dallas, Texas, and am in charge of the office at Dallas, Texas. Mr. James Aiken is the manager of the Pacific Express Company in the State of Texas. He lives in Dallas; has a room over the office in the city of Dallas. He has general management and charge of all the offices in the State of Texas. I know nothing about the want of consent of any other person. I know I did not give my consent for him to take the money. Mr. Smith, the defendant, assisted Mr. Griffin in the checking up of the books, and he never made any attempt to escape or evade detection. He was assisting Mr. Griffin in checking up

his books when the shortage was discovered, and as soon as I sent for him he came in and promptly admitted that he had lost the money at gaming, or that he had been living too high. He never denied taking the money, but openly admitted it, and never tried to escape or avoid detection. About eight or ten days elapsed from the 28th of November, the time the money was received from Mr. Aulick, and before Mr. Smith was arrested. He had handled large amounts of money each day. The amounts which passed through his hands each day varied from small sums of from $10 to $100 up to hundreds of thousands. It would be hard for me to tell exactly how much he handled each day, without examining the books, but I am satisfied it would average thirty or forty thousand dollars a day, without examining the books. He told me he thought he could replace it by borrowing it from some of his friends. I gave him my consent to go on the streets to see what he could do. This occurred in the morning of the day that he was arrested. I saw him on the streets afterwards during the day, but he was unable to replace the money. Smith has been money clerk for the Pacific Express Company for over a year. Before he was employed, the American Guaranty Company, at our request, made a bond for him to the extent of $2000. I do not know the terms of the bond, and I do not know whether the bond has been paid, as Mr. Aiken looks after that part of the business. I do not know how much Mr. Smith paid them each month for the bond which they gave us. As soon as a shortage occurs, we forward a statement to the company. All the employes of the company are bonded; that is, before they are employed they make a bond, acceptable to the Pacific Express Company, guarantying the payment of any shortage. During the time Mr. Smith has worked for the Express Company his reputation for honesty and integrity, and his general conduct, has been above reproach. He was the most efficient money clerk we have ever had in our employ."

Mr. Griffin testified: "I have known Mr. E. G. Smith, defendant, for the past ten years. He is about 22 years old. He worked for me in Little Rock, Arkansas. I also worked with him in the express office at San Antonio, before he came to Dallas. I was assisting him in checking up his books when the shortage was discovered. He never denied the fact, but admitted that he had lost the money in a game of poker, or in some other way. His reputation for honesty and integrity has always been above reproach. I never heard aught against him until this occurrence."

The defendant here offered other witnesses to prove the reputation of the defendant for honesty and integrity, and the State then admitted that his reputation for honesty and integrity was good up to the time of this occurrence.

*Oeland & Smith*, for appellant.—1. The court erred in overruling defendant's motion to quash the indictment. To plead an act of in-

corporation, if it be of the party pleading, it is necessary to allege, that it was duly incorporated, and the date and manner of incorporation.   Rev. Stats.; art. 1190;  Ins. Co. v. Davidge, 51 Texas, 244.

In a prosecution for embezzlement, it is necessary for the State to show a fraudulent intent and a fraudulent appropriation of the property alleged to have been embezzled, and any evidence which tends to show a claim or color of right, or a want of fraudulent intent at the time of the appropriation, is admissible.

The testimony of L. S. Garrison, witness for the State, all goes to show, that the defendant never denied the taking of the money, and never tried to avoid detection; that eight or ten days had elapsed after taking the money before it was discovered, during which time defendant had handled hundreds of thousand of dollars; that the defendant, when charged with embezzlement, admitted the taking, and made no effort to escape; that he went out on the streets and returned.   Peacock v. The State, 36 Texas, 647;  Leonard v. The State, 7 Texas Crim. App., 417;  Riley v. The State, 32 Texas, 763.

2.   The court erred in not allowing defendant to prove by the witness James Aiken, that before he was employed by the Pacific Express Company he made and entered into a contract with the Pacific Express Company and the American Guaranty Company, whereby, for the consideration of $5 per month, the American Guaranty Company was to hold the Pacific Express Company harmless for any money converted to his, E. G. Smith's, use and benefit while he was in the employ of the Pacific Express Company, and said bond was accepted by the Pacific Express Company; that E. G. Smith paid the Guaranty Company for said bond; that as soon as any shortage occurred, the Guaranty Company had refunded and paid back to the Pacific Express Company their money; that the Pacific Express Company had lost nothing; and that the Guaranty Company was the only party to the transaction that had lost anything; said evidence being admissible, first, to show that the offense of embezzlement had never been committed; second, it was admissible to be considered by the jury as evidence going to show the want of fraudulent intent on the part of the party taking the money; third, to show that the defendant considered that he had a right to take the money; fourth, to show that the Pacific Express Company had suffered no damage and lost no money; fifth, to show that the Pacific Express Company and the Guaranty Company had impliedly consented to the taking of the money when it received the consideration from E. G. Smith, and to pay back any moneys used by him; all of which is fully set forth in defendant's bill of exceptions number 1. Leonard v. The State, 7 Texas Crim. App., 417;  Riley v. The State, 32 Texas, 763;  Hernandes v. The State, 20 Texas Crim. App., 151;  Wilson v. The State, 20 Texas Crim. App.; 662;  Warren v. The State, 17 Texas Crim. App., 207;  Reed v. The State, 8 Texas Crim. App., 40; Ricks v. The State, 19 Texas Crim. App.; 308;  McNair v. The State,

14 Texas Crim App., 78; Kay v. The State, 40 Texas, 29; Boyd v. The State, 18 Texas Crim. App., 339.

The want of consent of a corporation can only be proved by the testimony of the officers of the corporation, such as president, secretary, or treasurer, those officers who constitute and compose the corporation.

The State alleged the money was taken without the consent of the corporation. The proof showed, as to the want of consent, only the testimony of L. S. Garrison, who was a mere agent of the corporation.

3. The court erred in that paragraph where he charges the jury on circumstantial evidence, the proof in this case showing that the defendant admitted the taking of the money, and it was not a case of circumstantial evidence, all of which more fully appears in defendant's bill of exceptions number 4.

A confession or admission is positive testimony, as distinguished from circumstantial testimony. The testimony shows, that defendant had admitted the appropriation of the money as soon as charged with the offense. The court erred in his written charge delivered to the jury submitting the issue of circumstantial evidence, which was promptly excepted to by defendant and bill of exceptions reserved to that phase of the charge of the court. Ross v. The State, 10 Texas Crim. App., 455; Conn v. The State, 11 Texas Crim. App., 391.

4. The court erred in that portion of his written charge to the jury in which he instructed the jury, that the want of consent of the agent in possession of the property was sufficient proof of the want of consent of the company. And in that portion of his charge where he charged the jury, that the want of consent of Garrison would be sufficient proof of the want of consent of the company, Garrison being the agent of the company at Dallas, Texas.

5. The court erred in refusing to give the special instructions requested by defendant in writing, said special instructions being as follows: "The mere fact of the use and appropriation of money belonging to another does not constitute embezzlement. There can be no embezzlement unless there be a fraudulent appropriation; that is, an appropriation of money with the intent to deprive the owner of the same and to appropriate it to the taker's use and benefit. This fraudulent intent is to be inferred from facts and circumstances and proven like any other facts, and if you find that the money in this case, if any was taken, was not appropriated with the fraudulent intent, as the same is above defined, you will acquit this defendant." Because the evidence in this case, both the admissions of the defendant himself made to Garrison and the testimony of Garrison as to his conduct at the time of his admissions, clearly raised the issue as to whether this defendant appropriated the money with the intention of defrauding the Pacific Express Company of the same, or whether it had been the temporary use thereof, with the intention of replacing the same.

The mere appropriation of money, without a fraudulent intent, does not constitute embezzlement. Leonard v. The State, 7 Texas Crim.

App., 417; Simco v. The State, 8 Texas Crim. App., 406; Stallings v. The State, 29 Texas Crim. App., 220.

In addition to the above authorities on fraudulent intent, counsel in their motion for rehearing cited: 1 Bish. Crim. Law, secs. 364–383; Fleener v. The State, 23 S. W. Rep., 1; Colkins v. The State, 98 Am. Dec., 134; Commonwealth v. Tuckerman, 10 Gray, 173; 1 Whart. Crim. Law, sec. 1030; The State v. Tompkins, 32 La. Ann., 620; The State v. Nolan, 19 S. W. Rep., 721.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The appellant was tried and convicted of the offense of embezzlement, and his punishment assessed at three years' confinement in the penitentiary, and from the judgment and sentence in the case he prosecutes this appeal.

The indictment under which he was tried charged him with the embezzlement of $865, money alleged to have belonged to the Pacific Express Company, an incorporated company. The appellant filed the · motion to quash the indictment in the court below, on the ground that it failed to allege the charter or act of incorporation, and that it failed to allege that same was incorporated under the laws of any State or foreign power. The court overruled the motion. The appellant excepted, and now asks us to revise the action of the court. In our opinion, there was no error in overruling the appellant's motion.

The appellant also complains, that the court allowed the State to prove, over his objection, by L. S. Garrison, that he was the agent of the Pacific Express Company at Dallas, and in the actual and exclusive care, custody, control, and management of the Dallas office, from which the money in question was taken, and that he did not give his consent for E. G. Smith (appellant) to take the money alleged to have been embezzled. It will be noted that the indictment charged that the money was taken without the consent of the Pacific Express Company. The appellant insists, that a corporation acts through its superior officers, and that the want of consent should have been proven by the president or secretary of the company, or at least by Aiken, who was present as a witness, and who was shown to have general charge of the the company in the State of Texas. In answer to this it is sufficient to say, that this money was received by the company at the Dallas office, which was under the direct supervision of Garrison, who acted for the company; and, moreover, the want of consent on the part of the company was not an issue in the case.

The uncontradicted evidence shows, that the defendant, as agent for the company, received this money from W. W. Aulick, to be transmitted to D. W. McCoy, at Kerrville, Texas. Some seven or eight days thereafter, Aulick, learning that the money had not been received by McCoy, reported to the company. Tracers were sent out for the money, and it was ascertained that the money had not been received at Kerr-

ville, nor could it be ascertained that it had left the Dallas office. Garrison then sent for Smith, the appellant, and asked him "where that money was," and he admitted that he had taken it and used it. He said he had lost it at poker. Garrison told him "that this was bad," and appellant replied, "Yes, he had been rolling it a little too high," and asked Garrison to give him a chance to replace it. This, in our opinion, was tantamount to an admission by appellant that he had used the money without the consent of the express company.

The appellant contends, that the court erred in charging upon circumstantial evidence, because he says the defendant confessed to the taking of the money, and this was positive evidence. It is true that our court has held that where there are confessions in the case, the court need not give a charge on circumstantial evidence. Text writers, however, treat confessions under the head of "Circumstantial Evidence." At any rate, it does not lie with the appellant in this case to complain that the court gave him a charge more liberal than he was entitled to.

The appellant offered in evidence a bond executed on his behalf by a guaranty company to the Pacific Express Company to indemnify it against any losses arising from defalcation or otherwise on the part of the appellant. The court admitted this bond in evidence, and in connection instructed the jury, that they could not look to such bond for the purpose of justifying or excusing the embezzlement, if any had been proven, but that they might look to said bond in mitigation of any punishment they might assess against the defendant in case they found him guilty. What this bond had to do with the case we are at a loss to see. It certainly can not be claimed that it gave the defendant the right to embezzle the money of his principal, nor did the court seem to take this view of it, but only allowed the jury to consider it in mitigation of any punishment they should assess against the defendant in case they found him guilty. This certainly, to our minds, was giving the defendant a more liberal construction of this testimony than the law warranted. The appellant, however, urged that this limitation by the court as to the purpose and effect of this testimony was erroneous; that the bond authorized the defendant to take and appropriate the money of his principal ad libitum, without any fear or apprehension of a criminal prosecution. If such be the law, then every officer who may have executed a bond to the State, county, or municipal governments to indemnify against loss by official misfeasance or malfeasance could appropriate to his own use the money of his principal with impunity, and the agent of every employer, whether corporate or individual, that might require of such agent a bond of indemnity against losses by embezzlement, in consequence of such bond, could steal his company's money and go unwhipped of justice. Such a doctrine would be monstrous. Fleener v. The State (Ark.), 23 S. W. Rep., 1.

Under our view of the case, there was no error in the failure of the court to further present the issue of fraudulent intent than was done

in the main charge, and there was no occasion to give the charge on that subject asked for the defendant. The contention of the appellant, that no fraudulent intent in this case was proven, because there was no concealment, but that defendant openly admitted the taking, is not sustained by the facts of this case. The defendant did conceal the taking of the money until he was found out and taxed with it, and then only did he admit its conversion, as we have before shown from the evidence. Nor does it follow, as claimed by appellant, that the want of concealment and a confession as to the taking wipe out the stain of embezzlement. The authorities referred to show, that not only was the taking open and admitted, but also that there was some claim of right to authorize the taking and appropriating of the property. In this case there was none but a secret taking, and on discovery an admission, with an avowal by appellant that he had spent the money which had been received by him, as the agent of the express company, to be safely forwarded to the consignee, in fast living and at the gambling table. In such a case there could be no question of fraudulent intent. The law implies it.

There is no error in the record, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.