STATE v. LYMAN E. COWDERY and Another.

February 6, 1900.

Nos. 11,826—(20).

### Grain—Warehouse Receipt—Authority to Sell.

A provision in a storage receipt, issued under G. S. 1894, § 7646, that the stored property may be mingled with other property of the same kind, or transferred to other elevators or warehouses, does not confer authority on the warehouseman to sell the property described therein.

### Same—Bailment.

Under such a receipt, when it in other respects conforms to the provisions of section 7646, the contract is a bailment, and not a sale.

### Flax.

Flax is included within the meaning and intent of G. S. 1894, § 7645, et seq., and is subject to the protection of the warehouse law.

### Evidence.

The evidence in this case does not show beyond a reasonable doubt that there was an intent to defraud the prosecutor, which is an essential ingredient of the offense charged, and the conviction is therefore set aside.

Lyman E. Cowdery and Jared G. Wheeler were indicted in the district court for Dodge county for grand larceny in the first degree. Defendants having demanded separate trials, defendant Cowdery was tried before Buckham, J., and a jury, which rendered a verdict of guilty. From an order denying a motion for a new trial, defendant Cowdery appealed. Reversed.

*Childs, Edgerton & Wickwire,* for appellant.

The tickets issued by the firm were contracts of sale, and not of bailment. If the relation of bailor and bailee existed, it was by virtue of the statute, for at common law the transaction was not

one of bailment, but one of sale; inasmuch as the grain was inter-mingled with other grain of like grade and removed to other ele-vators that Cowdery and Wheeler selected. The statute does not attempt to make such transaction a bailment, where an express contract is made authorizing the intermingling and removal of the grain. The statute was only designed to make the transaction a bailment where there was no contract right to intermingle and re-move grain. Rahilly v. Wilson, 3 Dill. 420; McCabe v. McKinstry, 5 Dill. 509; Powder Co. v. Burkhardt, 97 U. S. 110; Chase v. Wash-burn, 1 Oh. St. 244; South Australian v. Randell, 3 Priv. Coun. 101; Lonergan v. Stewart, 55 Ill. 44; State v. Rieger, 59 Minn. 151; 22 Alb. L. J. 358; Murray v. Pillsbury, 59 Minn. 85; Weiland v. Sunwall, 63 Minn. 320; Smith v. Clark, 21 Wend. 83; Dykers v. Allen, 7 Hill, 497; Hurd v. West, 7 Cow. 752, and note 756; 2 Kent, Com. 589, and note; State v. Stockman, 30 Ore. 36; Fishback v. Van Dusen & Co., 33 Minn. 111, 123; O'Dell v. Leyda, 46 Oh. St. 244.

It is the settled doctrine of the supreme court of Illinois that such a transaction is a sale and not a bailment. Richardson v. Olmstead, 74 Ill. 213; Lonergan v. Stewart, supra; Cloke v. Shaf-roth, 137 Ill. 393. See also Ardinger v. Wright, 38 Ill. App. 98.

The state failed to establish any criminal intent on the part of Cowdery to defraud Bradshaw or any one else. State v. Connelly, 57 Minn. 482, 486; State v. Johnson, 77 Minn. 267; Messenger v. St. Paul City Ry. Co., 77 Minn. 34; Brennan L. Co. v. Great N. Ry. Co., 77 Minn. 360. The contention that defendants held the prop-erty as bailees, based on G. S. 1894, § 7645, is not well founded, because flax is a plant and is not embraced within the term "grain."

W. B. Douglas, Attorney General, and C. W. Somerby, Assistant Attorney General, for respondent.

LOVELY, J.

Defendant, who was jointly indicted with another person, was convicted of the crime of larceny, as bailee, in fraudulently appro-priating a quantity of flax to his own use, with intent, as charged in the indictment, to deprive the owner thereof of his property, under the provisions of G. S. 1894, § 6709, subd. 2.

Lyman E. Cowdery was a warehouseman, and, with his partner,

was running an elevator at Kasson, where he received, from time to time, quantities of flax from the prosecuting witness, Bradshaw, aggregating in amount 760 bushels, and evidenced by nine receipts or tickets, which were given to the owner of the flax, and which the prosecution insist constituted the relation of bailor and bailee between the parties thereto, under the warehouse laws of this state. G. S. 1894, § 7645, et seq. The warehousemen became insolvent, made an assignment, and were unable either to furnish the flax or put up the equivalent in money.

The defendant insists that the tickets or storage receipts did not create the relation of bailment between defendant (who was tried alone) and the owner of the flax, but by the terms of such receipts constituted a sale thereof to the defendant and his partner, or, at least, authority to part with the flax; that the warehouse law, under which such contract of bailment must be established, does not apply to flax; also that, by reason of the previous business relations and conduct of the owner of the property stored with the defendant, the latter was led to believe that he was authorized to deal with the flax without reference to the terms of the receipts; from which, as defendant claims, it follows that there was no proof of the necessary intent to defraud, which is alleged in the indictment and is an essential element of the statute, and must therefore be proved.

The warehouse receipts referred to contain the requisites of G. S. 1894, § 7646, in all respects. They, "in clear terms, state the amount, kind, and grade" of the flax stored, and "the terms of storage," and, in addition, the following provision, which embraces the pith of the contention upon the construction of the storage receipt, viz.:

"Express authority is given, by acceptance hereof, that said grain or seed may be mingled with grain or seed of other persons, and shipped or removed to any other elevator we may select."

And it is urged that these provisions, which authorize a removal of the flax, etc., take this case out of the provisions of the Penal Code.

It is urged, in support of this claim, that an interpretation of the

warehouse statutes should be made that does not conflict with the generally settled rules of the common law, and that the particular provision of these contracts quoted above is inconsistent with the theory of a bailment.

While it is unquestionably true that the commingling of the property of one person with the property of another, with the consent of the owners, so as to destroy the specific identity of each, conclusively negatives the relation of bailor and bailee upon common-law rules, it must be remembered that it was the object of the statute to provide a remedy for the protection of the agricultural producers of this state which they did not have before, and, if the purpose and practical means by which such protection is afforded is to be found clearly expressed in the statute, it necessarily must be the statute, instead of the common law, that we are to interpret. It is our duty to discover the true legislative intent expressed by the statute, for, within constitutional limitations, that is always the real test in such cases. We cannot allow a repeal or modification of a statute by the law which the statute itself seeks to change; this is self-evident. Neither can we abridge the effectiveness of a wholesome statute by judicial construction or finesse. The very nature of the business that has long been conducted in this state by the owners of elevators and warehouses in dealing with the agricultural producers would lead to the inference that the provisions of the statute referred to were intended to create on the part of the warehousemen an obligation to have the owner's property or its equivalent ready for delivery when called for. The receipt, according to the statute, must be in writing, and it must state amount and grade of grain, charges for storage, and advances paid, which receipt shall be prima facie evidence that the holder thereof has in store with the party issuing such receipt the amount of grain of the kind and grade mentioned in such receipt, and penal provisions follow against false statements, etc. The suggestion arises, why should this contract be in writing? why so explicit? and why, upon its face, should evidence of its present money value be required, unless it was intended to be evidence of title and to become negotiable? And it follows that, if the title of the property is to remain in the owner, by necessary implication,

the contract, while not a common-law bailment, becomes vested with the characteristics of that trust relation, and is a bailment under the statute.

We do not think that the acts of mingling produce of one person with that of another, or the removal of such property from one elevator to another, are in necessary conflict with this view. These acts are essential in the conduct of the elevator and warehouse business. It must be mingled with other produce, if it is taken in store, or there would have to be a warehouse for every patron; and, in facilitating the business in question, it likewise may be necessary to remove the property stored from one depository to another, to accomplish practical ends. The earnestness of the able counsel for defendant in presenting their views upon this point has led to the consideration of these views, rather than any serious doubt upon the question itself; for we think the contention now urged has been anticipated and specifically provided against by the warehouse law itself. G. S. 1894, § 7645,—the preceding section to the one last referred to,—provides, inter alia,

"That whenever any grain shall be delivered for storage to any person, * * * such delivery shall in all things be deemed and treated as a bailment, and not as a sale, of the property so delivered, notwithstanding such grain may be mingled by such bailee with the grain of other persons, and notwithstanding such grain may be shipped or removed from the warehouse * * * where the same was stored," etc.

While this language remains in the statute, it is difficult to see how there can be room for interpretation, for the language of the receipts in this case is almost identical with the provisions which the statute declares shall not affect the liability of the warehouseman as bailee, and that this court has so understood its effect is clear from its decision in State v. Barry, 77 Minn. 128, 79 N. W. 656. Upon the receipts themselves we think it is clear that defendant was a bailee, and amenable to the law under which he was indicted.

Again, it is urged for defendant that the warehouse acts do not provide for storage of flax, which is not included in any proper definition of the word "grain." The distinctive word of the statute is "grain," and "flax" is not specifically referred to by that name,

and it, of course, becomes a question whether the storage of flax was within the legislative intent when these acts were passed. An imposing array of dictionaries and encyclopedias was produced on the argument to show that grain is a berry and flax a fiber. But this is a question of reasonable construction of a statute, rather than a scientific analysis, which must yield to the popular understanding that ought to prevail in such cases. Courts appeal to dictionaries in questions of doubt in science, and perhaps in search of evidence of popular understanding, when in doubt. But where, within the knowledge of the court, the dictionary conflicts with popular understanding, the latter will be adopted, although it may require a subsequent enlargement of the definitions of the lexicographer, which is continually necessary, since the dictionary is an evidence, rather than an originator, of definitions.

We have no doubt whatever from the custom at the time these statutes were enacted that they were supposed to apply to flax. It would startle the legislature that enacted them, or the legislatures that have convened since without recognizing the necessity of amending them, as well as the farmers of this state, who have continuously, since the law was passed, accepted receipts for deposits of flax, to tell them that in that respect it was not the intention of the lawmakers to protect them as well as the growers of wheat and barley. We think it would likewise startle the warehousemen themselves to construe such a distinction into the law. The defendant evidently saw no difference at the time of the issuance of his receipts to Bradshaw, for the words "grain" and "flax" are used convertibly in such receipts, and we judge from the record that his able counsel did not urge this view during the trial, or adopt it until after their briefs in this court had been printed. While in criminal cases, under the harsh penal statutes that once governed in England, nice and technical constructions upon indictments and statutes were adopted in favorem vitæ, a more liberal rule has since prevailed, more consistent with common sense, and we shall adopt in this case the construction which protects the numerous bailors of flax in this state, which we have no doubt was within the legislative, as well as the popular, mind when these laws were enacted.

The remaining assignments of error, with the exception of one, relate to alleged errors that are not likely to occur again, and, in view of the disposition we shall make of this case, need not be considered.

The evidence of defendant's intent to defraud in this record is solely the presumption arising from his inability to turn over to the prosecutor the flax stored upon demand, and it seems doubtful if the complaining witness intended a criminal prosecution until many months afterwards, when such demand, which seems to have been merely formal, without expectation that it would be complied with, was made. It is true that this proof of demand and refusal raises a presumption of guilt, and makes a prima facie case against defendant, but this presumption is so overcome by opposite inferences, from admitted and undisputed facts, that we cannot permit the verdict to rest upon it alone.

We do not find in this record any of the indicia of crime usual in similar prosecutions. The defendant had made no preparations for business collapse. He had run his affairs in the usual way, which had grown up, under the sanction of prosecutor and his other patrons, for many years, until, on a declining market, he found himself short, and unable to meet all his obligations. That defendant was a man of irreproachable character was established at the trial by a formidable number of witnesses, some of whom had stored produce with him, and had suffered loss, under the same circumstances as the complaining witness. Previous to the suspension of defendant's business, he and the prosecutor had conducted their business relations upon terms of unlimited confidence, for many years. The latter had stored his produce with defendant, sometimes receiving receipts and sometimes not. In all such cases it seems that such deposits were treated by defendant as if he had authority to dispose of them according to his best judgment, with the sanction of the prosecutor. These and other facts disclosed by the record lead us to the conclusion that this verdict should not be allowed to stand. Our views in this respect are strengthened by a statement of the learned trial court, which expressed doubts of the justness of the result.

It is ordered that the judgment of the court below be set aside, and a new trial awarded.