STATE OF IOWA, Appellant, v. C. M. SCHUMACHER.

Criminal law: EMBEZZLEMENT: CONVERSION OF FUNDS: EVIDENCE.
1  Where the manager of an elevator company was charged . with embezzlement by reason of having checked out funds of the company for the purpose of speculation on the board of trade, it must appear that he converted the amount represented by one or more of the checks to his own use or to the use of others to warrant conviction. If before checking out the money he had received and held funds or its equivalent in checks, or had deposited the same to the credit of the company in amounts equal to those checked out, there was no conversion; but if such was not the fact and he merely anticipated replacing the funds used, or if he in fact did subsequently restore them, he was guilty of embezzlement regardless of whether he was buying options for himself or for others. The evidence in this case is held to require submission of the question of whether defendant intended to fraudulently convert the money to his own use.

Same: CONVERSION OF FUNDS: INTENT: PRESUMPTION. Where the
2  defendant offered no explanation of transactions by which he used his employer's funds for a private purpose, he will be presumed to have intended a diversion thereof, the natural result of his act; and the fact that he was acting as agent of third parties in so doing is no defense.

**Same:** SUFFICIENCY OF EVIDENCE. On a prosecution for embezzlement direct evidence of intent to defraud is seldom obtainable, and the state may rely upon inferences to be drawn from the proven circumstances of the transaction.

**Constitutional law:** INDICTMENT: AMENDMENT. The statute authorizing an amendment to an indictment is not unconstitutional.

**Indictment:** FAILURE TO READ: WAIVER. Failure to read to the jury an amendment to an indictment is waived by proceeding to trial.

*Appeal from Humboldt District Court.—HON. D. F. COYLE, Judge.*

SATURDAY, NOVEMBER 22, 1913.

THE defendant was charged in the indictment with the crime of embezzlement, and on trial a verdict of not guilty was returned by direction of the court, and judgment entered thereon. The state appeals.—*Reversed.*

*George W. Cosson,* Attorney General, *John Cunningham,* County Attorney, and *Maurice O'Connor,* for the State.

*Lovrien & Lovrien,* and *Robert Healy,* for appellee.

LADD, J.—The accused was employed as manager of the Farmers' Elevator Company of Thor, April 15, 1912, and continued as such until July 11th following. The company's business was "to buy, sell, and deal in all kinds of farm products, poultry, coal, flour, mill stuffs, binding twine, and all kinds of farm machinery, stone, brick, and all kinds of fencing and building material, to deal in grain, seeds, cattle, swine, sheep," etc., but not in options or futures, nor to buy or sell grains on the board of trade in Chicago. It was incorporated and did its business through the Thor Savings Bank, in which the manager was to deposit its funds, and on which he was authorized to draw checks. He is charged with

having embezzled by issuing checks on said bank in the name of the Farmers' Elevator Company the funds of that company as follows: A check for $200, dated July 3, 1912, in favor of Harper & Ward; a check for $750 dated July 8, 1912, in favor of Harper & Ward; a check for $300, dated July 8, 1912, in favor of Harper & Ward; a check for $228.50, dated July 10, 1912, in favor of Amos Amorson. Harper & Ward operated what is commonly known as a bucket shop in Ft. Dodge, and the first check was issued in payment of the margin in the sale of 10,000 bushels of July oats at 44¾ cents per bushel on the Chicago board of trade. This was in the name of the Farmers' Elevator Company in whose name the sale was covered by a purchase at 42¾ cents per bushel July 6th, and remittance made to the company of $385. The second check was for the margin on the purchase of 750 barrels of July pork at $17.82 per barrel, and the third check for the margin on the purchase of 15,000 bushels of July oats at 41 cents per bushel. On the following day the oats deal was closed by a sale at three-fourths of a cent advance, making the profit $108.75, and remittance of $408.75 was made by Harper & Ward to the company. The pork was sold July 12th, 250 barrels at $18.07 per barrel, and 500 barrels at $18.02. This last account was transferred to Amorson and Tokheim, and it appears that Harper & Ward were aware that while the business was being done in the name of the Farmers' Elevator Company, it was not that of the company, but for other parties.

However reprehensible the conduct of the accused in conducting these deals in the name of the company without its consent and in entering the transactions on its books as though involving the purchase or sale of oats, it must

1. CRIMINAL LAW: embezzlement: conversion of funds: evidence.

have appeared on the trial that he had converted the amount represented by one or more of these checks to his own use, or that of others in order to have warranted conviction. Even though he checked out money for such purposes, if before doing so

he had received and then held in his possession money or its equivalent in checks, or had deposited these to the credit of the company, in amounts equal to those drawn out by the issuance of the checks in question, then plainly there was no conversion. But he might not check out the company's money to Harper & Ward in payment of options when he did not have funds in the bank or in his hands for the purpose of replacing that checked out, even though he may have anticipated replacing the money shortly thereafter; and, if such were the facts, he was guilty of embezzlement, regardless of whether he was buying options for himself or for Amorson and Tokheim.

The controlling inquiry, then, is whether the defendant appropriated the company's funds to the purchase of options, or merely issued the checks thereon as a matter of convenience, he then having for it funds to replace those checked out. The court evidently found the latter to be the true situation, else a verdict might not have been directed. The evidence disclosed that defendant, when arrested had checks and currency in his possession amounting to more than $780, and enough to balance his account with the company. There were three checks, two of which were received the day before, one for a car of oats, $310, and another for $408.75, received from Harper & Ward, and had been noted in the cashbook of the company on July 10th. The other was for $28.75, the date of which does not appear, and the currency may have been received that day. It is apparent, then, that there was money on hand other than the company's, and appearing on its books, more than sufficient to cover the check of $228.50 issued to Amorson, and therefore doing so was not a conversion of defendant's funds.

On July 8th, Amorson delivered a check of $302.20 issued by Kirketheim, which was deposited to the company's credit. This was a little more than enough to cover the check issued to Harper & Ward in payment of the option of 15,000 bushels of July oats, and therefore obviated any possible conclusion

that issuing that check was for conversion.   Another check of $750 was issued to Harper & Ward in payment of a pork option, and in doing so the defendant must have appropriated some of the company's money.   On that day, Amorson had given him the $302.20 check, leaving $2.20 after covering the $300 check.   An item of $42.80 was also credited.   The check of $385 from Harper & Ward on the first deal was deposited on that day.   As the $28.75 check was not dated, it may be conceded then to have been on hand, making altogether $458.75 of money not the company's deposited to cover the $750 check.   But $200 of the $385 must have been deposited to repay the check of that amount issued to Harper & Ward, for nothing other than the company's moneys was deposited on the 9th, and the $408.75 check from Harper & Ward, and the $310 check from Lowell, Hoyt & Co. to Amorson, with currency was necessary to balance the account.   These two items amounted to $718.75.   Deduct therefrom the check of $228.50 issued to Amorson and there is left $490.25, which was necessary to cover the shortage of July 8th, occasioned by the issuance of the two checks of $300 and $750 on that day to Harper & Ward.   As seen, there was deposited to the company's credit of money not belonging to it the sum of $458.75 or $258.75 more than enough to repay the $200 check issued on the first deal.   Adding the $490.25 and the $258.75 and we have $749, or within a dollar of the amount of the check issued to Harper & Ward for the margin on the 750 barrels of July pork, and demonstrating that defendant had taken of the company's funds the $200 paid by check on the deal in July oats and $490.25 at least of the $750 paid for the pork options. That he took these sums with intent to restore them, or subsequently did restore them, furnished no defense.   *State v. Lentz,* 184 Mo. 223 (83 S. W. 974) ; *Spalding v. People,* 172 Ill. 40 (49 N. E. 993) ; *State v. Eastman,* 62 Kan. 353 (63 Pac. 597) ; *Orr v. State,* 6 Ga. App. 628 (65 S. E. 582) ; *Nesbitt v. State* (Tex. Cr. App.) 144 S. W. 944; *Life Ins. Co. v.*

*Miller*, 114 Ky. 754 (71 S. W. 921) ; 10 Am. & Eng. (2d Ed.) 997; 15 Cyc. 507.

Whether defendant acted with the intention of fraudulently converting the money to his own use also was an issue for the jury. He offered no explanation of the transactions, and he is presumed to have intended the consequences which naturally resulted therefrom, namely, the diversion of the company's money into the hands of others without its consent.

2. SAME: conversion of funds: intent: presumption.

*Spalding v. People, supra.* As said in *People v. Meadows,* 199 N. Y. 1 (92 N. E. 128) : "A deliberate diversion of the moneys being shown, it required but slight evidence in the facts and circumstances to satisfy the jurors as to the existence of the felonious, or criminal intent." The rule was well stated in *State v. Lentz,* 184 Mo. 223 (83 S. W. 970, 974) : "If a man commits embezzlement by conversion to his use of the property of his employer, it is but a reasonable and fair presumption that he means to embezzle, and but a natural inference that he intends the result of such act, which is the deprivation of the owner of his property." The entries were so made on his books as to indicate an intention to conceal the nature of the transactions, and there was evidence of admissions by him that he took the note of Tokheim for his part, and moreover, the checks could not well have been issued and transmitted to Harper & Ward without understanding that the effect was to take the company's money and transfer it to that firm without its consent.

There was no room for mistake in thinking enough was on hand belonging to·himself thereby to cover the amounts, and the circumstance, if true, that he was acting as the agent of Amorson and Tokheim can make no difference. *State v. Bryan,* 40 Iowa, 379; 15 Cyc. 495; *State v. Pingel,* 128 Iowa, 515; *Bowman v. Brown,* 52 Iowa, 437.

Seldom is there direct evidence of intent to defraud, and necessarily the state must rely on inferences to be drawn from

the facts and circumstances of the transaction proven.   See

*State v. Reinhart,* 26 Or. 466 (38 Pac. 822) ;

3. SAME: suf-
ficiency of
evidence.

*State v. Cowdery,* 79 Minn. 94 (81 N. W. 750, 48 L. R. A. 92) ; *Smith v. State,* 34 Tex. Cr. R. 265 (30 S. W. 236, 237) ; *Hendee v. State,* 80 Neb. 80 (113 N. W. 1050).

The indictment as amended was sufficient, and the statute authorizing such amendment is not inimical

4. CONSTITU-
TIONAL LAW:
indictment:
amendment.

to the Constitution of the state.   *State v. Mullen,* 151 Iowa, 392.

If such amendment was not read to the jury the irregularity in this respect was waived by the

5. INDICTMENT:
failure to
read: waiver.

defendant in proceeding with the trial.   *State v. Norton,* 67 Iowa, 641.

We are of opinion that the court erred in not submitting the cause to the jury and in directing a verdict of not guilty. The ruling is reversed as erroneous, but as the appeal is by the state, the cause is not remanded.—*Reversed.*

WEAVER, C. J., and EVANS and PRESTON, JJ., concur.