### STATE v. C. H. DAHLSTROM.[1]

February 6, 1925.

No. 24,443.

**Conviction of bank cashier for larceny sustained.**

1. The evidence *held* sufficient to justify the jury in finding defendant guilty of larceny in misappropriating money of a bank of which he was cashier. The felonious intent could be found from the writings and entries in the bank records made by defendant.

**New trial because of prosecutor's misconduct denied.**

2. There was no misconduct of the county attorney of such a nature as to entitle defendant to a new trial.

**Charge to jury.**

3. The charge on character evidence was substantially correct.

*Headnote 1. See Embezzlement, 20 C. J. p. 486, § 82; p. 487, § 83.
Headnote 2. See Criminal Law, 16 C. J. p. 1144, § 2641.
Headnote 3. See Embezzlement, 20 C. J. p. 490, § 86.

[1]Reported in 202 N. W. 51.

Defendant was indicted by the grand jury of Otter Tail county charged with the crime of grand larceny in the first degree, tried in the district court for that county before Parsons, J., and a jury which found him guilty. From the judgment of conviction and from an order denying his motion for a new trial, defendant appealed. Affirmed.

*Brown & Dell* and *M. J. Daly*, for appellant.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Deputy Attorney General and *Leonard Eriksson*, County Attorney, for respondent.

HOLT, J.

Defendant was convicted of the crime of grand larceny and appeals. The main grounds urged for a reversal are: The evidence is insufficient to warrant conviction, misconduct of the county attorney, and errors in the charge of the court.

The evidence tending to show the commission of crime is, in brief: In the banking rooms of the State Bank of Parkers Prairie another corporation named the Parkers Prairie Investment Mortgage Company held forth dealing in lands and making loans. The stockholders of the bank were also stockholders of the investment company and the officers of the bank were also officers of the company and, according to the oral testimony, all mortgages and real estate matters were handled through the investment company, though the bank's books show that mortgages were taken and held by it. In April, 1920, Andrew D. Johnson sold a farm to the investment company and in the transaction was to receive a mortgage back for $10,000. For convenience the deed was taken in the name of defendant, who also executed the mortgage to Johnson. Later the company sold and, through defendant, conveyed the farm to one Lemke, subject to the mortgage. Lemke had a checking account with the bank. March 1, 1922, Lemke came to the bank to pay $600 interest on the mortgage, due the next month, and also $25 interest on a debt due the bank, and defendant drew a check for $625 payable to "ourselves" which Lemke signed. Defendant gave a receipt

in behalf of the bank for the money and the next day credited $600 thereof to the account of the investment company. Andrew D. Johnson had a savings deposit account in the bank and, learning that the interest on the mortgage had been paid, presented his pass book on the bank to defendant and requested a credit therein for the $600 interest. This was so done by defendant on April 3, 1922. The bank was never credited with the $600. The net result was that, of the interest payment, $600 apparently went to the investment company and not to the bank, nevertheless the bank was debited that amount in Johnson's pass book.

The indictment charges that defendant, on April 3, 1923, wrongfully and feloniously, with intent to defraud the bank, the true owner of the money, fraudulently embezzled and converted to his own use $600, which had come into his possession and care on March 1, 1922, by virtue of his office as cashier of the bank. No advantage was attempted to be taken during the trial of the mistake in the indictment of the year the offense was charged as having been committed, and it is too late now. It is said the $600 never was the money of the bank. No express agreement appears that the bank should collect the interest from Lemke and hold it for Johnson. And, if defendant had received the money as an individual or even as an officer only of the investment company, it would be true that it was not the bank's property. But defendant dealt with it as the property of the bank, or as intrusted to it, when upon the pass book he credited the amount to Johnson, thereby charging it against the bank. We think the facts disclosed justified the jury in finding that defendant accepted this $600 interest from Lemke for the bank —the receipt he gave so states—to be held and accounted for by it to Johnson, but wrongfully and feloniously converted it to use of another, it is immaterial whether to the use of himself or the investment company. In other words, from the facts proven the jury could find a criminal intent on the part of defendant to commit larceny by the transaction, and this beyond a reasonable doubt, for in the absence of any explanation from the books, or otherwise, an inference of unintentional mistake in crediting the investment company with the $600 and charging the bank therewith on Johnson's

pass book is excluded. None but defendant received and disposed of this $600, and the written evidence of such receipt and disposition was made by him. There was here no evidence negativing intent as in State v. Cowdery, 79 Minn. 94, 81 N. W. 750, 48 L. R. A. 92.

The misconduct of the county attorney complained of consisted in offering proof concerning other mortgages appearing upon the books of the bank. We may surmise an intention to show manipulation of interest paid like that now involved, or, in other words, to prove other offenses of the kind here charged in order to establish criminal intent. The court allowed preliminary proof, or questions, that two other mortgages appeared to have been carried on the books of the bank in the accounts of Andrew Hanson and Melvin Holm which were sold by the bank in February, 1922. Some inquiry was also made concerning a Vogt mortgage and one of Ernest Peterson, but of these latter nothing of significance appeared upon the exhibits received in this case. The oral testimony received concerning all of these mortgages, due to the care of the trial court, was so limited that no inference of wrongdoing by defendant could possibly be drawn therefrom by the jury. A receipt given Vogt was ruled out as too remote. And as to the three other mortgages nothing in the exhibits, or documentary evidence, which went to the jury-room, suggested anything detrimental to defendant. It must also be said that, in the discussion between counsel and court concerning the admissibility of the evidence above referred to, there was no attempt to cast reflections upon defendant or to convey suggestions to the ears of the jury. The whole trial appears singularly free from the unfair methods and acrimony which so often mar hotly contested criminal trials.

We do not consider the exceptions to the charge of the court well taken. At the close thereof defendant's counsel saw nothing amiss therein, except he suggested an instruction be added covering circumstantial evidence. This was done, and apparently in terms satisfactory to counsel. But in the motion for a new trial, as well as on this appeal, error is assigned to that part of the charge dealing with character evidence. No request was made to charge on that subject, nor was the court asked before the jury retired to modify

in any manner the charge that had been given thereon. But, that aside, the language of the instruction was substantially in accord with that held not erroneous in State v. Dolliver, 154 Minn. 297, 191 N. W. 594.

The conviction is affirmed.