WILLIAMSTOWN CREAMERY ASSOCIATION, Appellant, v. AMERICAN SURETY COMPANY OF NEW YORK et al., Appellees.

MARCH 13, 1928.

*R. Feyerbend* and *M. F. Condon,* for appellant.

*Geiser & Donohue,* for appellee.

STEVENS, C. J.—The appellee T. B. Condon, during the month of December, 1924, and for several years prior thereto, was the treasurer of the appellant, Williamstown Creamery Association, Incorporated. As such treasurer, he executed a bond

to the corporation in the penal sum of $5,000, with the appellee American Surety Company of New York as surety, indemnifying his principal against loss resulting from embezzlement. The material conditions of the bond were as follows:

"We, T. B. Condon, as principal, hereinafter called the 'employee,' and the American Surety Company of New York, as surety, bind ourselves to pay Williamstown Creamery Association, Williamstown, Iowa, as employer, such pecuniary loss, not exceeding five thousand dollars, as the latter shall have sustained of money or other personal property (including that for which the employer is responsible), by any act or acts of larceny or embezzlement on the part of the employee, directly or through connivance with others, while in any position or at any location in the employ of the employer; this suretyship to begin March 19, 1924, and to end, (a) with the date of the learning by the employer either of loss hereunder or of dishonesty on the part of the employee, or (b) with the date of the retirement of the employee from the service of the employer, or (c) with the date of termination of the suretyship by the surety or the employer in the manner hereinafter set forth in Clause 7."

Condon was also president of the State Bank of New Hampton, in which his account as treasurer was kept, in the name of the Williamstown Creamery Association. On December 28, 1924, the bank was closed, by order of the state superintendent of banking, who promptly took charge of its assets, as receiver. The bank was wholly insolvent, and has paid, or will pay, but a small percentage of the amount due to depositors. Condon was the manager and executive officer of the bank until April, 1924, when E. J. Armstrong, by order of the superintendent of banking, took practical charge thereof, and, with Condon, managed the bank until it was finally closed, in December. This action against the American Surety Company proceeds upon the theory that Condon received and deposited the funds of the appellant in his bank with full knowledge that it was bankrupt, and that, by reason thereof, he wrongfully, fraudulently, and feloniously converted the same to the use and benefit of the bank, and thereby committed the crime of larceny by embezzlement.

A motion to direct a verdict in favor of the appellee surety company was sustained by the court upon two grounds: namely, that the evidence was not sufficient to sustain the charge of em-

bezzlement, and that appellant failed to give the notice to appellee at its home office in the city of New York of the alleged embezzlement within 60 days after learning thereof, as required by the terms of the bond.

First, is there any evidence from which the jury could rightfully have found that any portion of the funds of appellant were embezzled by Condon for his own use and benefit, or that of the bank? The applicable statute defining embezzlement provides that:

"If any officer * * * of any corporation * * * in any manner * * * embezzles or fraudulently converts to his own use, or takes and secretes with intent to embezzle or convert to his own use, without the consent of his employer, master * * * any money or property of another, * * * he is guilty of larceny." Section 13031, Code of 1924.

The method of depositing and handling the funds of appellant was for the president or secretary thereof to deliver or forward checks or drafts received by it to the bank for credit. When received or presented at the bank, the checks or drafts were indorsed in the name of the treasurer by the use of a rubber stamp, and credited to the account of the Creamery Association. Any employee or officer of the bank received and indorsed checks and drafts in the manner stated. Condon was not authorized to draw checks on the account. All checks drawn thereon were signed either by the president or the secretary of the corporation. Presumptively, all of the funds of appellant were deposited in the New Hampton State Bank, but Condon never received, or in any way personally appropriated, any of the proceeds deposited in the bank. The president and secretary of the corporation had full charge and control of the account. It is not claimed by appellant that Condon ever, in fact, misapplied, converted, or appropriated any sum belonging to the corporation to his own use, or that same was used or invested in the name or on behalf of the bank, other than in the usual and ordinary course of banking business, nor is it claimed that the account was not correctly kept on the books of the bank. To constitute the crime of larceny by embezzlement, there must have been a fraudulent intent on the part of Condon to convert the money or property of appellant to his own use. A felonious intent is an essential element of the crime. *White v. International Textbook Co.*, 144

Iowa 92; *State v. Carmean*, 126 Iowa 291; *State v. Foster*, 11 Iowa 291. Direct proof of a felonious intent is not usually easily obtainable, but it is sufficient if the same be established by circumstantial evidence. *State v. Schumacher*, 162 Iowa 231.

The relation between the New Hampton State Bank and appellant was that of debtor and creditor. The title to the funds deposited passed at once to the bank, and they were not thereafter the subject of embezzlement by it. 1 Cyclopedia of Criminal Law, Section 533 *et seq.*, and cases cited. The deposits tendered by appellant were received by the bank the same as the funds of other depositors, and the record does not contain a scintilla of evidence of a felonious intent on the part of Condon to convert the same to his own, or the bank's, use. It is a well known fact that many banks have become insolvent, and their affairs been taken over by the state superintendent of banking during recent months. The evidence tended to show that an unusually large percentage of the bills receivable of the bank in question was worthless. Condon ceased to be the manager of the bank in March, 1924, when an assessment was levied upon the stockholders, to make good its depleted capital, and Armstrong, by order of the state banking department, assumed first place in the management of the bank's affairs.

Whether gross negligence on the part of an officer of a corporation in the handling of money or property coming into his possession as such officer may, if loss result, amount to larceny by embezzlement, we have no occasion to decide. It has been held that, ordinarily, in the absence of a statute so providing, the crime could not be so committed. 1 Cyclopedia of Criminal Law, Section 548; *Rucker v. State*, 12 Ga. App. 632 (77 S. E. 1129).

It may be conceded that neither the president nor the secretary of the appellant association knew the unfortunate financial condition of the bank, or that drastic action by the state superintendent of banking was imminent. If they had known the facts, the funds would, no doubt, have been withdrawn. This does not aid appellant. The evidence was clearly insufficient to sustain the allegations of the petition. Since we have arrived at this conclusion on the merits, it is unnecessary to consider the issue as to the service of notice on the surety company. We have examined all of the authorities cited by appellant, but, as applied

834

to the facts of this case, none of them are in conflict with the conclusion announced. We shall not review them.

.The verdict in favor of the defendant was properly directed, and the judgment is affirmed.—*Affirmed.*

DE GRAFF, ALBERT, MORLING, and WAGNER, JJ., concur.