## STATE OF MINNESOTA vs. JOHN H. RIEGER.

Argued Nov. 12, 1894. Affirmed Nov. 16, 1894.

No. 9137.

59 151
77 133
77 134
59 151
79 277

**Laws 1876, ch. 86, § 6, not repealed by Penal Code, § 415.**

Laws 1876, ch. 86, § 6, providing that no person holding grain in store shall dispose of or deliver it out of the warehouse in which it is stored, without the express authority of the owner of the grain, and the return of the receipt given therefor, is not repealed by Penal Code, § 415.

**Requisites of Indictment under this act.**

In an indictment under section six (6) it is not necessary to allege a tender of the receipt and a demand for the return of the grain.

**Contract construed.**

A receipt for grain placed in store, which in all other respects constituted a contract of bailment, contained the following: "The conditions on which this wheat is received at this elevator are that Rieger [the warehouseman] has this option: Either to deliver the grade of wheat that this ticket calls for, or to pay the bearer the market price for the same, less elevator charges, on surrender of this ticket." *Held*, that this did not render the contract one of sale. It merely gave the warehouseman an option to buy when the receipt was presented. This option he could only exercise when the receipt was presented, and by paying the money.

Appeal by defendant, John H. Rieger, from a judgment of the District Court of McLeod County, *Francis Cadwell*, J., entered June 2, 1894, that he is guilty of removing stored grain from his warehouse at Glencoe without authority of the owner and that he be punished therefor by confinement at hard labor for two years in the penitentiary at Stillwater.

On September 22, 1891, James Keenan deposited two hundred and sixty bushels No. 1 wheat in store with defendant at Glencoe and took his receipt therefor, a copy of which is set out in the opinion. Defendant failed in business in January, 1892, and Keenan soon after demanded his wheat, but did not get it or any pay for it. Defendant was indicted November 14, 1893, under Laws 1876, ch. 86. (1878 G. S. ch. 124, §§ 13–19.) He pleaded not guilty, but on trial was convicted and sentenced. He appeals.

*A. T. Faber,* for appellant.

The clause contained in this contract giving the defendant the option to return wheat of like grade and quality, or pay the market price in money on its presentation, made it a sale and not a bailment. The defendant could at any time exercise his right of election thereunder, and when he did so the title to the property passed to him and he became indebted to the holder of the ticket for the market price of the wheat on the day the ticket should be presented. So long as the wheat remained in the elevator and the defendant did not exercise his right under the contract, it remained a bailment. But when his right of option was exercised, the bailment ceased and the title passed. *Johnston* v. *Browne,* 37 Ia. 200; *Young* v. *Miles,* 20 Wis. 615; *Stearns* v. *Raymond,* 26 Wis. 74; *Richardson* v. *Olmstead,* 74 Ill. 213; *Lonergan* v. *Stewart,* 55 Ill. 45; *Chase* v. *Washburn,* 1 Ohio St. 244; *Carlisle* v. *Wallace,* 12 Ind. 252; *Reherd's Admr.* v. *Clem,* 86 Va. 374; *Barnes* v. *McCrea,* 75 Ia. 267; *Lyon* v. *Lenon,* 106 Ind. 567.

The literal construction of Laws 1876, ch. 86, would prohibit the delivery or removal of grain held in store in a warehouse for any purpose whatever. But such a construction would make it a crime to remove or deliver grain out of a warehouse in case of fire, attachment or other necessity, unless the express consent of the owner were first given, and the tickets returned. It is impossible to suppose this could have been the intention of the legislature. Removal with intent to deprive the owner of his property or with intent to appropriate the grain was the evil sought to be guarded against. *Commonwealth* v. *Slack,* 19 Pick. 304.

The indictment should have contained an allegation of such intent. *United States* v. *Cruikshank,* 92 U. S. 542; *Commonwealth* v. *Filburn,* 119 Mass. 297; *Commonwealth* v. *Clifford,* 8 Cush. 215; *Commonwealth* v. *Bean,* 14 Gray, 52.

The phrase, wrongfully, unlawfully and feloniously, is a conclusion of law and does not add any effect to the indictment. *Commonwealth* v. *Byrnes,* 126 Mass. 248; *State* v. *Murphy,* 43 Ark. 178.

It may be true that the defendant did the acts charged in the indictment and yet committed no offense. The indictment is in-

sufficient in this, that it does not allege that the wheat was delivered and removed with an intent to deprive the owner thereof, or with an intent to appropriate the same to defendant's use. *State* v. *Friend*, 47 Minn. 449; *State* v. *Comings*, 54 Minn. 359; *Commonwealth* v. *Dean*, 110 Mass. 64.

Laws 1876, ch. 86, § 6, was repealed by 1885 Penal Code, §§ 415, 540. *Mullen* v. *People*, 31 Ill. 444; *State* v. *Horsey*, 14 Ind. 185.

It was also necessary to allege in this indictment that a tender of the storage charges was made, the ticket presented and a demand made for wheat of like grade and quality, and that a demand for the market price was made and the same refused. Laws 1876, ch. 84, § 6. *State* v. *Munch*, 22 Minn. 67.

*H. W. Childs*, Attorney General, and *Geo. B. Edgerton*, his assistant, for respondent.

The indictment is based upon Laws 1876, ch. 86, § 6. It alleges all that is necessary to constitute an offense under that section.

If the indictment were based upon section three, the allegation of a demand would be necessary, for it is provided that if a person shall, after demand, tender and offer, wilfully neglect or refuse to deliver to the person making such demand the full amount of grain of the kind and grade which such person is entitled to, such bailee shall be deemed guilty of larceny. Under section one of the act, grain deposited according to the provisions of the contract set forth in the indictment is a bailment.

There is nothing in the Penal Code indicating an intent to repeal Laws 1876, ch. 86, §§ 1, 6 or 8.

The words that "J. H. Rieger has this option, either to deliver the grade of wheat that this ticket calls for or to pay the bearer the market price in money for the same, less elevator charges on surrender of this ticket," simply mean that the elevator man may pay the money instead of delivering over the grain, when the demand is made for the grain; but those words gave him no right to ship out the grain or to sell it or convert it to his own use.

MITCHELL, J. The defendant was indicted and convicted under Laws 1876, ch. 86, §§ 6, 8 (1878 G. S. ch. 124, §§ 18, 20), of disposing of certain grain, and delivering it out of the warehouse in which it

was held by him in store, without the express authority of the owner and the return of the receipt given for the same.

The point is made that these sections of the statute have been repealed by Penal Code, § 415, under which alone, if at all, the defendant could be indicted and punished, and that the indictment is insufficient under the Penal Code, because it does not allege that the act was done "with intent to deprive or defraud the true owner of his property." We think the point is not well taken. Penal Code, § 540, provides that nothing in the Code affects any of the provisions of the statute defining and providing for the punishment of offenses not defined and made punishable by this Code.

In view of the manifest object of Laws 1876, ch. 86, and the evils which it was designed to remedy, we think it very clear that section six (6) defines an offense not defined by Penal Code, § 415. The latter defines larcenies, and the only effect of it was to do away with the necessity of a trespass, which is an essential element of every larceny at common law, while section six (6) of the act of 1876, which was designed to protect those storing grain in warehouses, absolutely forbids the shipping of stored grain out of the warehouse without the express authority of the owner and the return of the receipt for the property. Very clearly, an act might constitute a violation of the law of 1876 which would not constitute larceny as defined by the Penal Code.

The receipt given by defendant for this grain was as follows:

"Pioneer Elevator, Glencoe, Minn.    J. H. Rieger, Proprietor.

"Received in store Sept. 22, 1891, for account of J. Keenan, or bearer, 260 bushels of wheat. Storage for each fifteen days, or fractional part thereof, one-half cent per bushel. Winter storage will be from Nov. 15, to May 15, (6 months,) and the charges for such winter storage shall not exceed four cents per bushel. All wheat in store shall be kept insured against loss or damage by fire, for account of whom it may concern. *The conditions on which this wheat is received at this elevator are that J. H. Rieger has this option: Either to deliver the grade of wheat that this ticket calls for, or to pay the bearer the market price in money for the same, less elevator charges, on surrender of this ticket.* Damage by heating at risk of holder hereof.

"J. H. Rieger, Inspector."

The indictment charges that defendant delivered and removed the grain out of the warehouse without the express authority of Keenan, the owner thereof, and without the return of the receipt given therefor, and without having paid said Keenan the market price, or any sum, therefor. It is strenuously urged that, notwithstanding the provisions of the act of 1876, the italicised part of this receipt makes the contract one of sale and not of bailment.

It is upon the construction of this clause of the receipt that we think the entire case hinges. It is no doubt true, as counsel suggests, that there is nothing in the statute prohibiting the parties from making any kind of a contract they choose. But as the parties must be deemed to have contracted with reference to the statute, it is legitimate to consider its provisions in construing the express terms of their contract. The act of 1876 was largely in the nature of a police regulation of the business of storing grain. Its object was the better protection of those delivering grain for storage. Except the provision declaring certain transactions bailments which at common law would have been sales, perhaps the most important provision of the act was that of section six (6,) prohibiting the shipping out of stored grain without the express authority of the owner and the return of the receipt. One great object of this was to compel warehousemen to keep constantly on hand sufficient grain to meet all outstanding receipts. These considerations but add force to what we think is the obvious and natural meaning of the language of the written contract. All it amounted to, in our judgment, was an option on the part of the defendant, when the receipt was presented, to pay the market price of the grain instead of returning the grain in specie; and this option he could only exercise when the receipt was presented, and by paying the money. It never contemplated that he might treat the wheat as his own without first paying for it. If he elected to buy, it was to be a purchase for cash, and not on credit.

It can hardly be necessary to add that if defendant had unlawfully shipped out this wheat, contrary to the provisions of section six (6,) the offense was complete without any tender of the receipt or demand for the grain by the owner. The gist of the offense charged is the unlawful disposition of the grain, and not a failure to redeliver it on demand.

Exceptions are taken to the exclusion of certain evidence offered by defendant. It is not necessary to decide whether contemporaneous parol evidence would have been admissible to prove an agreement different from that expressed in the receipt, for none such was offered. It is not claimed that there was any agreement between the parties except that contained in the writing.

Judgment affirmed.

GILFILLAN, C. J., absent on account of sickness; took no part.

(Opinion published 60 N. W. 1087.)