STATE v. ALFRED J. BARRY.

June 23, 1899.

Nos. 11,509—(17).

**Warehouse Receipt—Contract of Bailment not of Sale.**

A receipt for grain placed in store, which in all other respects constituted a bailment, contained this clause, "Which amount, and same quality by grade, will be delivered to the owner of this receipt or his order," and also provided that the grain was insured for the benefit of the owner, and that the latter should pay for storage at a certain rate. *Held*, that this receipt constituted a contract of bailment, and not one of sale.

**Grand Larceny—Indictment.**

*Held*, further, that the indictment in this case states facts sufficient to constitute the offense of grand larceny in the first degree, under Pen. Code, § 415, subd. 2.

Defendant was indicted in the district court for Meeker county for grand larceny in the first degree. The case was tried before Powers, J., and a jury, which rendered a verdict of guilty; and from a judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*John T. Byrnes* and *M. C. Brady*, for appellant.

The language of the indictment is not sufficiently full and explicit to inform defendant of the nature and cause of the accusation. Pen. Code, § 415, points out several methods in which the crime may be committed, though it does not use the term "bailee" in connection with all. Where the definition of a crime includes generic terms, the indictment must state the species, and must descend to particulars. U. S. v. Hess, 124 U. S. 483; U. S. v. Carll, 105 U. S. 611; State v. Howard, 66 Minn. 309, 312. This statute defines the crime by its legal result, and does not contain its essential elements. Wharton, Crim. Pl. (9th Ed.) § 154; McCann v. U. S., 2

Wyo. 274. The indictment should bring the case within the portion of the statute defining the offense under the conditions enumerated. State v. Griffith, 45 Kan. 142. See also State v. Grisham, 90 Mo. 163; Gaddy v. State, 8 Tex. App. 127; People v. Poggi, 19 Cal. 600; Com. v. Smart, 6 Gray, 15; McCann v. U. S., supra; Moore v. U. S., 160 U. S. 268; People v. Cohen, 8 Cal. 42; 1 Wharton, Crim. L. 1061; People v. Peterson, 9 Cal. 314. The indictment contains no direct or positive allegation that defendant was bailee of Pearson, the complaining witness. People v. Allen, 5 Denio, 76, 79; People v. Tryon, 4 Mich. 666, 667; Gaddy v. State, supra; Moore v. U. S., supra.

Laws 1895, c. 148, was a substitute for all former acts relative to storing grain in country warehouses. It was a revision, and a substitute for pre-existing laws. Sutherland, St. Const. §§ 154, 155; King v. Cornell, 106 U. S. 395; Smith v. County of Nobles, 37 Minn. 535; Giddings v. Cox, 31 Vt. 607. It makes what was a felony a misdemeanor, and repeals the old law. State v. Currie, 3 N. D. 310. Its title is comprehensive, and is of moment in ascertaining the meaning of the act. People v. Wood, 71 N. Y. 371; Sutherland, St. Const. §§ 210-213.

The offense shown by the evidence does not come within the statute under which the indictment was drawn. There was a variance between the evidence and the indictment. Other persons had wheat in the elevator which was shipped out at the same time, whereas the indictment charges defendant with converting 1,077 $^{40}/_{60}$ bushels of wheat the property of Nels M. Pearson. Hall v. Pillsbury, 43 Minn. 33, 35. Pearson was not owner, but tenant in common in the mass. Hence defendant could be indicted on complaint of each of the other tenants in common, notwithstanding that all the wheat was shipped out at one time. Such cannot be the law, for there could be but one prosecution and conviction. Rapalje, Larceny & Kindr. Off. § 117; Hoiles v. U. S., 3 MacArthur, 370; Hudson v. State, 9 Tex. App. 151. The indictment should have contained the names of the owners of the whole amount claimed to have been taken. This difficulty is not overcome by G. S. 1894, § 7263. The complaining witness was not "in actual or constructive possession" of the wheat; nor had he a "gen-

77 M.—9

eral or special property in the whole or any part." Property is the exclusive right of possessing, enjoying, and disposing of a thing; or ownership. Slief v. Hart, 1 N. Y. 20, 24; Rigney v. City, 102 Ill. 64, 77; Ayers v. Lawrence, 59 N. Y. 192, 198; Dow v. Gould, 31 Cal. 630, 637; Dorman v. State, 34 Ala. 216, 239; Stevens v. State, 2 Ark. 291, 299. Special property consists in the right to custody and detention against the lawful owner. Eisendrath v. Knauer, 64 Ill. 396, 402; Beecher v. Allen, 5 Barb. 169, 175. The complaining witness was absolute owner of an undivided portion. The interest in the property of the person named in the indictment as owner should not be such an interest as is incapable of identification, but a separable part, with entirety of ownership therein. State v. Merrill, 44 N. H. 624; State v. Daniels, 32 Mo. 558; Hudson v. State, supra.

The contract is a contract of sale, and not a contract of bailment. Rahilly v. Wilson, 1 Cent. L. J. 80; McCabe v. McKinstry, 5 Dill. 509; Chase v. Washburn, 1 Oh. St. 244; South Australian v. Randell, 3 Priv. C. 101; Lonergan v. Stewart, 55 Ill. 44; State v. Rieger, 59 Minn. 151; 22 Alb. L. J. 358; Murray v. Pillsbury, 59 Minn. 85; Weiland v. Sunwall, 63 Minn. 320; Smith v. Clark, 21 Wend. 83; Dykers v. Allen, 7 Hill, 497; Hurd v. West, 7 Cow. 752, and note; 2 Kent, Com. 589, and note; State v. Stockman, 30 Ore. 36; Fishback v. Van Dusen & Co., 33 Minn. 111, 123.

*W. B. Douglas*, Attorney General, and *C. W. Somerby*, Assistant Attorney General, for the state.

The indictment is sufficient. The gravamen of the offense is the conversion. The bailment, agency, employment, etc., must be averred, but the particulars thereof need not be, because they are matters of inducement. Bishop, Stat. Crimes, § 422; People v. Hill, 3 Utah, 334; Ritter v. State, 111 Ind. 324; State v. Poland, 33 La. An. 1161; State v. Washington, 41 La. An. 778; State v. Jamison, 74 Iowa, 602, 604; State v. Goss, 69 Me. 22; State v. Mohr, 68 Mo. 303; State v. Meyers, 68 Mo. 266; Lycan v. People, 107 Ill. 423; 1 McClain, Crim. L. § 654; 2 Bishop, New Crim. Proc. § 323a; G. S. 1894, §§ 6709, 7645–7648; People v. Page, 116 Cal. 386; Lowenthal v. State, 32 Ala. 589; People v. Johnson, 71 Cal. 384; State v. Com-

ings, 54 Minn. 359, 361. Cf. State v. Mims, 26 Minn. 191. When the offense is statutory, and is completely defined, an indictment in the language of the statute is sufficient. State v. Comfort, 22 Minn. 271; State v. Mohr, supra; People v. Tomlinson, 66 Cal. 344; People v. Mahlman, 82 Cal. 585; People v. Page, supra. Where a statute expressly designates a particular class of bailees, it has been held that the indictment must contain allegations bringing the person charged within the scope of the statute; and if the statute is deficient in its definition some courts hold that the indictment should allege all the elements essential to the crime. Terry v. State, 1 Wash. 277; State v. Mims, supra. To this class belong many of the cases cited by appellant.

Laws 1895, c. 148, does not repeal by implication Pen. Code, § 415. State v. Rieger, 59 Minn. 151; State v. Miller, 140 Ind. 168; State v. Stevenson, 52 Iowa, 701. Repeals by implication are not favored. The acts must be inconsistent, and the repugnancy clear and unmistakable. Moss v. City of St. Paul, 21 Minn. 421. See also Beal v. White, 28 Minn. 6. The relation of bailor and bailee existed independently of G. S. 1894, § 7645. Ardinger v. Wright, 38 Ill. App. 98; 1 McClain, Crim. L. § 554; Hutchison v. Com., 82 Pa. St. 472; State v. Stevenson, supra.

BUCK, J.

It is conceded by each party to this action that the defendant was indicted and convicted under G. S. 1894, § 6709, subd. 2, being same as section 415 of the Penal Code. The indictment is as follows:

"Alfred J. Barry is accused by the grand jury of the county of Meeker, in the state of Minnesota, by this indictment, of the crime of grand larceny in the first degree, committed as follows: The said Alfred J. Barry on the 26th day of December in the year 1896, at the town of Litchfield, in the county of Meeker, in the state of Minnesota, then and there having in his custody and control and possession as bailee of Nels M. Pearson, ten hundred seventy-seven and $^{40}/_{60}$ bushels of wheat, of the value of six hundred forty-seven $^{60}/_{100}$ dollars, did then and there, with the intent to defraud the owner of said wheat, and with the intent to deprive the true owner of said wheat of the same, wilfully, wrongfully, unlawfully, and feloniously appropriate the whole of said wheat to his own use, the said Nels M. Pearson being then and there the true owner of said wheat. Contrary to the form of the statute in such case made and

provided, and against the peace and dignity of the state of Minnesota.

Dated at Litchfield, in said county of Meeker, this 27th day of January, A. D. 1897.                           W. M. Abbott,
                                                · Foreman of the Grand Jury."

G. S. 1894, § 6709 (Pen. Code, § 415), under which the indictment was found, is as follows:

"A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person,
*    *    *

"Having in his possession, custody, or control, as a bailee, servant, attorney, agent, clerk, trustee, or officer of any person, association, or corporation, or as a public officer, or as a person authorized by agreement or by competent authority to hold or take such possession, custody, or control, any money, property, evidence of debt or contract, article of value of any nature, or thing in action or possession, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof,—

"Steals such property, and is guilty of larceny."

During the years 1895 and 1896 the defendant operated a grain elevator at Litchfield, in this state, which was situated upon the right of way of the Great Northern Railway Company.  On October 31, 1895, one N. M. Pearson deposited in the defendant's said elevator 1,077 $^{40}/_{60}$ bushels of No. 10 wheat, and defendant then issued to Pearson the following receipt:

"Farmers & Merchants Elevator.    No. 546.
                    Litchfield, Minn., Oct. 31, 1895.
Received in store of N. M. Pearson 1,077 $^{40}/_{60}$ net bushels No. 1 wht.   Which amount, and same quality by grade, will be delivered to the owner of this receipt, or his order, as provided by law and the rules of the railroad and warehouse commission of Minnesota, upon surrender thereof and payment of lawful charges.   The established maximum rates and charges for receiving grain, insuring, handling, and storing same 15 days, and delivering, is two cents per bushel. Storage after the first 15 days one-half cent per bushel for each 15 days or part thereof, for the first three months; after the first three months, one-half cent per bushel for each 30 days or part thereof. If grain is cleaned at owner's request, one-half cent extra per bushel. This grain is insured for benefit of the owner.

1,095 bu. 55 lbs. gross.
18 bu. 15 lbs. dockage.                  ·          A. J. Barry, Lessee,
1,077 bu. 40 lbs. net.    Grade No. 1.          By A. J. Barry, Agt."

After the issuing of this receipt, and before the time of finding the indictment, the defendant shipped out of the elevator all of the wheat which Pearson had deposited there, and the evidence would have justified the jury in finding that the defendant had sold it. Pearson demanded this wheat of the defendant, but he said that he had shipped it out of the elevator and sold it, and could not tell where the money had gone, and that he had no money to pay for it. It was a controverted question on the trial whether Pearson, at the time he took the wheat to the elevator, authorized the defendant to ship it out, and whether Pearson then said to defendant that he did not care what became of the wheat, only that when he demanded his money he could get eight cents per bushel below the Minneapolis price, and whether the defendant was authorized by Pearson to do what he pleased with the wheat. The jury, by their verdict, must have found that no such agreement was made between the parties, and no such authority was conferred by Pearson upon Barry.

The question then arises as to the construction to be placed upon this written instrument, dated October 31, 1895, issued by Barry to Pearson, acknowledging the receipt of the grain, and agreeing to compensate Pearson therefor. Under G. S. 1894, § 7645, this contract is a bailment, and not a sale, no matter whether the grain is mingled by the bailee with the grain of other persons or not.' G. S. 1894, § 7650, provides that

"No person receiving or holding grain in store, shall sell or otherwise dispose of, or deliver out of the storehouse or warehouse where such grain is held or stored, the same, or any part thereof, without the express authority of the owner of such grain and the return of the receipt given for the same."

This last section was not repealed by Pen. Code, § 415. State v. Rieger, 59 Minn. 151, 60 N. W. 1087. We do not think that said section of the Penal Code was repealed by Laws 1895, c. 148, so far as bailments of grain in public warehouses are concerned. It certainly does not repeal it in terms, and, as the acts are not inconsistent or repugnant, a repeal by implication should not be permitted. Now, if the receipt of the grain under the contract in question is a bailment, then it was the duty of the defendant, upon the demand of the bailor, to deliver to him an equal amount of wheat, and of the

same quality by grade, as defendant had received of the bailor, mentioned in the receipt of contract, viz., 1,077 bushels. This he did not do, but shipped it out of the warehouse and sold it.

The case of State v. Rieger, supra, is cited to show that the transaction herein was a bailment, and not a sale. The receipt in that case contained many provisions similar to this one, but the one upon which the controversy arose was as follows:

"The conditions on which this wheat is received at this elevator are that J. H. Rieger has this option: Either to deliver the grade of wheat that this ticket calls for, or to pay the bearer the market price in money for the same, less elevator charges, on surrender of this ticket."

And this court held that all it amounted to was an option on the part of the defendant, when the receipt was presented, to pay the market price of the grain in specie, and that this option he could only exercise when the receipt was presented, and by paying the money. "It never contemplated that he might treat the wheat as his own, without first paying for it. If he elected to buy, it was to be a purchase for cash, and not on credit."

The case at bar is much stronger against the defendant than the case against Rieger. He had an option to buy, if he paid cash, on return of the receipt. Barry had no such right, and when the receipt was presented to him it was his duty to deliver to Pearson the same amount and same quality or grade of wheat as he (Barry) had received, or else to deliver the same wheat to Pearson. It cannot be held that under the terms of the contract the parties contemplated that Barry might sell said stored grain without the express authority of the owner and return of the receipt, nor that he might ship out the same without keeping on hand the full amount of grain of the kind and grade which Pearson had stored in said elevator, and to be delivered to Pearson upon demand, and return of the receipt, as provided by G. S. 1894, § 7647. The contract also contained a clause that the grain was to be insured for the benefit of the owner, and it cannot be doubted but that this referred to Pearson as the owner, and not to Barry. If the grain was cleaned at owner's request, one-half cent extra per bushel was to be paid therefor. The maximum rate and charge for receiving grain, and insur-

ing, handling, and storing same for 15 days, and delivery, was two cents per bushel; and a less rate for a greater number of days. These facts tend to strengthen the theory that the parties contemplated by the terms of the contract that it was a bailment and not a sale of the grain.

The defendant contends that a variance exists between the indictment and the evidence, for the reason that the contract in question contemplated a mingling of the wheat (that is, a mingliing of Pearson's wheat with that of others), and that the same must be described in the indictment as a mass owned in common by Pearson with others. We need not enter upon any discussion of this question, for no such fact appears in the record. The claim is mere guesswork, as will appear by a careful examination of the evidence, and it need not be considered.

The further point is made by the defendant that the indictment is insufficient in this: that it charges that he committed the offense as bailee, without setting out the particular facts constituting the bailment, and that there is no direct, positive allegation that the defendant was the bailee of N. M. Pearson, the complaining witness. The indictment charges that, at the time of the larceny of the wheat, Pearson was the true owner of the wheat; that the defendant had it in his custody, control, and possession as bailee of Pearson; that while having the wheat, viz. 1,077 $^{40}/_{60}$ bushels, in his custody, control, and possession as bailee, Barry, with intent to defraud the owner of said wheat, and deprive Pearson of the same, wilfully, wrongfully and unlawfully and feloniously appropriated the said wheat, of the value of $647.60, to his own use. Here we have the averment of ownership, bailment, agency, employment, description of property, value, and felonious appropriation thereof to his own use with the intent to defraud, and the time and place stated with certainty. What more was necessary to convey to the defendant complete notice of the offense with which he was charged, and to enable him to prepare for his trial upon the allegations in the indictment?

We should be loath to compel a person charged with a criminal offense to go to trial under an indictment which would prove to be a snare or mislead him to his injury, for human life and human

liberty are too dear to be the subjects of uncertain, insufficient, or improper allegations in an indictment; but the frequent attempts to hinder the speedy prosecution of criminals by raising trivial and technical objections to their prosecution is a source of great annoyance and irritation to our law-abiding citizens, if not full of danger to the state in which we live. Under this indictment the defendant is informed of the nature and cause of the accusation against him, and, if convicted of the offense charged, he could not again be put in jeopardy of punishment for the same offense. The offense charged is that of grand larceny in the first degree, under the statute; and the defendant is accused of having committed this offense when acting in relation to the property of Pearson in a fiduciary capacity, and whose property he had wrongfully converted to his own use in a manner made felonious by the statute. This is the gravamen of the charge, and it is distinctly alleged in the indictment; but the allegations need not be extended beyond the statutory terms, although those terms must be so far pursued as to identify the statute and comprehend the offense in full. The bailment must be averred, but, on principle, the particulars of it need not be averred, because it is a matter of inducement, and the general allegation will suffice. Bishop, St. Crimes, § 422. Nor was it necessary to charge how Pearson became the owner of the property, as the allegation that he was the owner covered all necessary facts in this respect,—as much so as if the indictment had alleged how and when he became such owner. And the same may be said as to the charge that Barry was the bailee of Pearson.

As we hold that said section 415 of the Penal Code is in full force, an indictment properly drawn under it for grand larceny in the first degree and a conviction therefor is punishable under the statute. It may be that the defendant might have been indicted, convicted, and punished under another section of the statute for this identical offense, but that fact would not of itself render this indictment invalid. The section under which it is conceded that the defendant was indicted covers cases where the offense consists in a bailee violating his trust by feloniously converting to his own use property of the owner which the bailee holds in a fiduciary capacity. Where there are two legislative enactments, under each of which an indict-

ment may be found against a person for the same offense, neither law is thereby unconstitutional or invalid, but a conviction and punishment under one act would be a bar to such proceedings under the other law for the same offense.   We are of the opinion that the indictment states facts sufficient to constitute the offense of grand larceny in the first degree, under Pen. Code, § 415, subd. 2.   State v. Comings, 54 Minn. 359, 56 N. W. 50.

Judgment and order affirmed.