(February 21, 1910.)

## STATE, Respondent, *v.* W. J. HENZELL, Appellant.

[107 Pac. 67.]

DUTIES OF WAREHOUSEMEN—WAREHOUSE RECEIPT—UNLAWFUL SALE OF GRAIN STORED—CRIMINAL INTENT—GIST OF THE ACTION.

1. A receipt issued by the manager of a warehouse for grain received which contains the substantial requirements provided for in secs. 1486 and 1487, Rev. Codes, is negotiable, and may be transferred by indorsement under the provisions of sec. 1491, Rev. Codes, and its negotiability is not destroyed by reason of the fact that it may contain surplusage or stipulations and restrictions not authorized by the provisions of the statute.

2. Where a party is on trial charged with the unlawful sale of grain stored in his warehouse, he should not be heard in his defense

to urge that a warehouse receipt issued by him for grain received and stored is not in form and substance as required to be issued by the provisions of the statute.

3. Where B. stored grain in a warehouse, controlled and operated by H., and received a warehouse receipt therefor, and thereafter transferred such receipt by indorsement, and the purchaser of the receipt presented the same to H. at his warehouse and demanded the grain, and delivery was refused on the ground that the grain was not in the warehouse, on a prosecution for the sale of such grain in violation of the provisions of sec. 1490 of the Rev. Codes, it is not permissible for H. to show that prior to the receipt of the grain in ·his warehouse and the delivery of the warehouse receipt therefor he had contracted with B. to purchase such grain and that he thereafter sold the grain under the belief that he had a right to sell it as his own grain.

4. Under the provisions of the statutes of this state regulating the duties and obligations of warehousemen and prescribing the penalty for the violation of such duties, it is made a felony for anyone operating a warehouse to sell any grain stored therein without first obtaining the written consent of the owner and holder of the warehouse receipt which has been issued for such grain; and in a prosecution for a violation of the statute (sec. 1490, Rev. Codes), the act itself of selling the grain constitutes the crime, and the motive or intent with which the sale was made is immaterial and constitutes no defense.

5. In a prosecution for unlawfully selling grain stored in a warehouse, the only criminal intent that it is necessary to show is that the act itself was done voluntarily and not under duress or any compulsion by superior force, and no specific wilful, malicious or wrongful intent is necessary.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District, for the County of Nez Perce. Hon. Edgar C. Steele, Judge.

Prosecution for the unlawful sale of grain stored in a warehouse. From a judgment of conviction and an order denying a new trial defendant appealed. *Affirmed.*

Fred E. Butler, for Appellant, Geo. W. Tannahill making oral argument.

The defendant should have been permitted to show that the complaining witness had invited, authorized and directed him

to do the very acts in regard to such grain that he did, even though such assent and direction was by parol. (*Mills v. Glennon,* 2 Ida. 105, 6 Pac. 116; Jones on Chattel Mortgages. secs. 455-465, 661; *Stafford v. Whitcomb,* 8 Allen, 518; *Conkling v. Shelley,* 28 N. Y. 360, 84 Am. Dec. 348; *Roberts v. Crawford,* 54 N. H. 532; *Gage v. Whittier,* 17 N. H. 312; *Sanford v. Duluth etc. El. Co.,* 2 N. D. 6, 48 N. W. 434; *Emery v. Kempton,* 2 Gray (Mass.), 257; *Roys v. Johnson,* 7 Gray (Mass.), 162.)

The defendant should have been permitted to show that the complaining witness had disposed of the grain, and that the defendant had been authorized to make such disposition of it, if for no other reason than to guide the court in exercising its discretion as to the extent of penalty, which should be imposed upon defendant if he should be found guilty. (*Sykes v. People,* 127 Ill. 117, 19 N. E. 705, 2 L. R. A. 461.)

In this case a man, relying upon the word of another, is led into a technical violation of the law, and being refused the right by the court to show the facts of the case, is sentenced to pay the penalty intended by the legislature to be suffered only for a most wilful violation of its provisions. (*Hankins v. People,* 106 Ill. 631.)

D. C. McDougall, Attorney General, J. H. Peterson, O. M. Van Duyn, Assistants, and D. E. Hodge, Prosecuting Attorney Nez Perce County, for Respondent.

Under a statute practically identical with secs. 1489 and 1491, Rev. Codes, the supreme court of Oregon has held that the warehouseman cannot escape criminal liability thereunder because the receipts issued by him are not in the statutory form; that the form and contents of the receipts are immaterial so far as the warehouseman's criminal responsibility is concerned. (*State v. Koshland,* 25 Or. 178, 35 Pac. 32.) The same is the holding in Minnesota and Illinois. (*State v. Rieger,* 59 Minn. 151, 60 N. W. 1087; *McReynolds v. People,* 230 Ill. 623, 82 N. E. 945.)

The Illinois court rejects the contention that receipts are explicable orally. (*Sykes v. People,* 127 Ill. 117, 19 N. E. 705, 2 L. R. A. 461.)

The leading case on the subject of intent as involved in such cases as this one, as a defense to the charge in this case, comes from Iowa. Therein the defendant was convicted of the same crime as the defendant in this case. (*State v. Stevenson,* 52 Iowa, 701, 3 N. W. 743.)

In statutory crimes intent is no element of the offense unless the statute makes it so. (*State v. Browne,* 4 Ida. 723, 44 Pac. 552; *State v. Keller,* 8 Ida. 699, 70 Pac. 1051.)

AILSHIE, J.—The defendant was convicted in the district court for a violation of sec. 1490 of the Rev. Codes. It was charged by the information that while the defendant was the manager of a warehouse he received certain grain for storage and receipted therefor, and that he thereafter sold and disposed of the same without the consent or authority of the holder of the warehouse receipt. He was tried and convicted and sentenced to serve a term in the state penitentiary.

The facts on which this prosecution rests are substantially as follows: In the month of May, 1909, one R. C. Bywaters delivered a quantity of barley at the warehouse of the Greer-Rochdale Co., Ltd., at Greer, Idaho, and thereupon received from the defendant, who was the agent and manager of the company, the following warehouse receipt:

"GREER-ROCHDALE CO., LTD.      No. 1263.

"Greer, Idaho, May 5, 1909.

"Received for storage from R. C. Bywaters 4315 lbs. of sacked bly, Grade 1 feed, Condition . . . . subject to the following conditions:

"Loss or damage from fire, water, the elements, or unavoidable casualties at owner's risk.

"Storage 75¢ per ton, which shall carry the grain to December 31st following, and 10¢ per ton per month, or fractional part thereof shall be charged thereafter until delivery is made.

"The makers of this receipt will not be responsible for weights or grades, except at the warehouse where issued, and parties purchasing grain stored under this receipt must have and accept same at said warehouse.

"All right of subrogation or recovery for loss or damage by fire, injury or otherwise, either against the Greer-Rochdale Co., Ltd., or the railway company upon whose land the buildings containing this grain is located, is by the acceptance of this receipt specially waived by the owners or holders. thereof.

"Delivery will be made upon presentation of this receipt, properly endorsed, and payment made of all charges.

"Delivery to be made in the order in which warehouse receipts are surrendered, and the Greer-Rochdale Co., Ltd., not to be held responsible for delay in delivery, caused by failure of the Railway Company to furnish cars.

"Sacks 50.　　　　Bushels 4315.

"W. J. HENZELL, Agent."

After receiving this receipt Bywaters sold the same to L. W. Robinson, and Robinson thereafter sold and delivered the same to the Vollmer-Clearwater Co. The latter company presented the receipt to the defendant at the warehouse of the Greer-Rochdale Co. sometime in June, and demanded the grain and at the same time tendered the warehouse or storage charges. The defendant failed to deliver the grain on the ground that he did not have it, and it is admitted that it had been previously sold and disposed of by him. This prosecution followed as a result of his failure to deliver the grain on demand.

At the trial of this case in the lower court the defendant offered to prove that prior to the delivery of the grain by Bywaters at the warehouse, defendant had a contract and agreement with Bywaters to buy this grain, and that he had in fact purchased the same from Bywaters, and that the delivery thereof at the warehouse was merely a compliance with the previous contract and agreement, and that the receipt introduced in this case was not intended to be a warehouse receipt within the meaning of the statute, but was merely given at the time a load was delivered as an evidence of the amount of grain delivered. This proffer was argued before the district court, and the court, in ruling on the offer and rejecting the same, stated his position on the matter as follows:

"As I understand this statute, it was enacted to prevent men taking grain and giving receipts for it, and then afterward selling that grain or letting it get out of their possession without the written consent of the parties to whom they had given these receipts, and if it be true that you can prove an oral statement then the statute would be nugatory—in fact, an oral agreement would take the place of what the statute says shall be the written consent of the parties. I do not believe this is competent, and the court will sustain the objection."

Objection was also made to the introduction of the receipt upon the ground that it was not in compliance with the statute, and did not constitute a negotiable warehouse receipt within the meaning of the statute.

Dealing with the sufficiency of this receipt first, it is well enough to note that sec. 1487 of the Rev. Codes prescribes the form in which warehouse receipts shall be made, and sec. 1486 provides that, "It shall be the duty of every person keeping, controlling, managing or operating, as owner or agent or superintendent of any company or corporation, any warehouse, commission house, forwarding house, mill, wharf or other place where grain, flour, wool or other product is stored, to deliver to the owner of such grain, flour, wool, or other product a warehouse receipt therefor, etc." Sec. 1493, which provides the penalty for a violation of certain provisions of the statute, says: "Any person who shall violate any of the provisions of this chapter shall be guilty of a felony, etc." "This chapter," as used in the foregoing section, embraces secs. 1478 to and including 1493. It was therefore as much a violation of the statute for the defendant to issue a warehouse receipt not in conformity with secs. 1486 and 1487 as it was for him to sell or dispose of the grain after having receipted for it. He is, therefore, in a rather embarrassing situation to urge the contention here that he issued a receipt not in conformity with the statute and which was not negotiable within the meaning of sec. 1491. The latter section provides, among other things, as follows:

"All checks or receipts given by any person operating any warehouse, commission house, forwarding house, mill, wharf or other place of storage for grain, flour, wool or other produce or commodity stored or deposited, and all bills of lading and transportation receipts of every kind, are hereby declared negotiable, and may be transferred by indorsement. . . . . "

This question was dealt with by the supreme court of Indiana in *Miller v. State*, 144 Ind. 401, 43 N. E. 440. In that case the defendant contended that the receipt was not in conformity with the statute. The court disposed of the question in the following manner:

"Counsel contend that this receipt is not in form such as required by the statute. If this were true, it would ill become appellant to try to take advantage of it. The statute required him to give the receipt, and prescribed its form. If, then, the paper given by him was in acknowledgment of wheat received by him for storage in his warehouse, as indeed it shows on its face, and if the paper so given as a receipt should fail in any particular to conform to the requirements of the statute, that would be rather an aggravation of appellant's wrong than an excuse for it. He ought to have given his receipt as required by the statute, and should not be heard to complain of his own fault in the matter."

The observations of the Indiana court are applicable to the position taken by defendant here. So long as it appears that he actually gave a receipt for the grain, it would scarcely be competent for him to contend that his receipt was not in the form prescribed by the statute. The statute commands him to issue a negotiable receipt in a specified form for all grain received by him at his warehouse. A failure to do so would be a violation of the statute, and it would be, to say the least, extraordinary to allow a defendant to plead the commission by him of one felony as a defense for the commission of another felony.

Notwithstanding what we have just said as to the form of this receipt, it further appears to us that the receipt issued was at least a substantial compliance with the requirements of the statute. The receipt contains all the material and essential

requirements prescribed by the statute. Whether or not the conditions and reservations contained in the receipt are surplusage, or more than the statute authorizes the warehousemen to insert in his receipt, is not involved in this case and requires no consideration. If they are in excess of the authority conferred by statute, they would be treated merely as surplusage anyway, but that question is not herein involved and will receive no consideration by the court. It is sufficient to say that the receipt contained the substantial requirements of the statute and was a negotiable warehouse receipt.

We next pass to the question of intent and the right of the defendant to introduce evidence tending to show that he had contracted to purchase this grain and that he thought he had a right to sell and dispose of it. The statute under which this prosecution is had, sec. 1490, reads as follows:

"No person operating any warehouse, commission house, forwarding house, mill, wharf, or other place of storage, shall sell, hypothecate, ship, transfer, or in any manner remove, or permit to be shipped, transferred or removed beyond his custody and control, any grain, flour, wool or other produce or commodity for which a receipt has been given by him as aforesaid, whether received for storing, shipping, grinding or manufacturing or other purposes, without the written assent of the holder of the receipt."

It will be observed at once that the statute itself says nothing about the intent with which the person acts. It in no way deals with the subject of intent; it only deals with acts. It says: "No person operating any warehouse . . . . shall sell . . . . any grain . . . . for which a receipt has been given by him . . . . without the written assent of the holder of the receipt." This statute is evidently intended as an arbitrary statute, prohibiting the act itself irrespective of the intent with which the act may be committed. If it were not arbitrary in its terms, it would be a practical nullity. If a warehouseman, or his agent, could be permitted in every case to introduce evidence as to oral agreements and understandings and the intent with which he acted, the entire statute regulating the duties and responsibilities of warehousemen

would be a dead letter, and merely directory in its practical workings and operations. The lawmakers evidently intended that the farmer might store his produce in a warehouse at fixed and stipulated storage charges, and receive a receipt therefor, and sell and transfer the receipt in the ordinary ' course of business the same as he could sell and deliver the grain or produce in kind. It was intended that these warehouse receipts might enter into trade and the commercial transactions of the country, and thereby facilitate the business dealings of farmers and those with whom they deal. The statute, therefore, says to the warehouseman that whenever he receives grain for storage, he shall issue a warehouse receipt in a specified form, and it thereupon commands him never to sell or dispose of that particular grain and never to permit it to be removed beyond his custody and control until he receives the written assent of the holder of that receipt. Secs. 1487, 1490 and 1492 contemplate the return of the receipt by the holder thereof before the warehouseman can deliver up the grain. The form of receipt prescribed by sec. 1487 provides that the article stored is "to be delivered at this warehouse, upon return of this receipt, properly indorsed, and payment of charges." The receipt given in this case stipulated, and very properly too, that "delivery will .be made upon presentation of this receipt properly indorsed and payment made of all charges." These provisions are intended as a protection to the warehouseman, and the prohibition against his sale of the property without the written consent of the holder of the receipt is a corresponding protection to the owner of the receipt who is also the owner of the property stored. These duties on the one hand and obligations on the other—the prohibitions on the one part and the commands on the other—are reciprocal and are intended for the equal protection of both the warehouseman and the property owner.

To allow the defendant to introduce evidence to show that he had in fact purchased this grain prior to receiving it in the warehouse and prior to issuing this warehouse receipt would be equally violative of the provisions of the statute, and would amount in substance to allowing him to prove the com-

mission of another felony in order to justify the particular act with which he is charged. If he had purchased the grain and was the owner of it, then he should not have issued a warehouse receipt for it. Sec. 1488 of the Rev. Codes specifically prohibits any person issuing a receipt under the provisions of this act for any grain or produce "not actually in store at the time of issuing such receipt." Now, if Bywaters did not own any grain stored in the defendant's warehouse at the time of the issuance of this receipt, the defendant clearly violated the law in issuing such a receipt, and would be as much liable to the penalty of the statute for issuing such a receipt as he is for selling grain belonging to another and stored in his warehouse. It was clearly never intended by the legislature that such proof could be made. To admit such evidence would be subversive of the objects and aims of the statute itself.

But it is insisted that intent is a necessary ingredient of every crime. This is true in the sense that the act must have been committed by the defendant voluntarily and not under duress or acting under compulsion of superior force. . Aside from this, however, the statute under consideration requires no special wilful, malicious, or wrongful intent whatever. We have many statutes of this character, and this court has had occasion to hold that such a statute requires no specific intent on the part of the defendant. (See *State v. Brown*, 4 Ida. 723, 44 Pac. 552; *State v. Keller*, 8 Ida. 699, 70 Pac. 1051.)

In the case of *State v. Stevenson*, 52 Iowa, 701, 3 N. W. 743, the warehouseman had issued his receipt and thereafter shipped the grain out of the state. When prosecuted for a violation of the statute in doing so, he offered to prove that the shipment was made with the knowledge and verbal consent of the owner of the wheat, and the supreme court of Iowa held that such evidence was inadmissible. In considering that question and passing upon a statute substantially the same as ours, the court says:

"The statute makes it a crime for any person to sell, encumber, transfer, ship, or in any manner remove beyond his immediate control, any property for which a receipt or voucher

has been given by him, in violation of the terms of the receipt or voucher, without the written consent of the person holding such receipt or voucher. . . . . If the statute in question is intended for the protection only of the person holding the receipt or voucher, it would seem that the fact that the shipment was made in his presence, with his knowledge and without any objection, would show that there could have been no intent to defraud, and no criminal responsibility. But it is evident from this whole section that it is intended for the protection of the community, as well as the protection of the holder of the voucher. It is clear that Petrie, in this case, with the receipt in his possession, might perpetrate a fraud upon third parties, the grain not being stored with defendant as stated in the receipt. The defendant could not, innocently, under the statute, with such a receipt outstanding, ship the wheat beyond his control, even in the presence of Petrie, and with his verbal assent. Such an act would furnish Petrie the means of perpetrating a fraud, which it is one of the objects of the statute to prevent. The written consent of the person holding the receipt or voucher is necessary in order to authorize the person giving it to ship the property described beyond his control.'' (3 N. W. 743, S. C., on rehearing. See *State v. Rieger,* 59 Minn. 151, 60 N. W. 1087; *Sykes v. People,* 127 Ill. 117, 19 N. E. 705, 2 L. R. A. 461.)

From what has been said herein it follows that the judgment must be *affirmed,* and it is so ordered.

Sullivan, C. J., and Stewart, J., concur.