# STATE v. LAURIE MARX.[1]

March 28, 1918.

No. 20,736.

**Grand larceny — conviction sustained by evidence — evidence in rebuttal prejudicial.**

Defendant was convicted of grand larceny and appeals. It is *held*:

(1) The indictment was sufficient.

(2) The evidence, though conflicting and not at all conclusive of guilt, justified the verdict.

(3) Defendant's brother testified as a witness on behalf of defendant. On cross-examination he was asked if he did not say to the complaining witness that his brother was a "crook." He denied making such statement. His answer was final, and it was prejudicial error to permit complaining witness to testify in rebuttal that the witness made such statement to her.

Defendant was indicted by the grand jury for the crime of grand larceny, tried in the district court for Le Sueur county before Tifft, J., and a jury which returned a verdict of guilty as charged in the indictment. Defendant's motion for a new trial was denied. From the judgment and sentence to the state reformatory for an indeterminate period, and from the order denying his motion for a new trial, defendant appealed. Reversed.

*Charles C. Kolars,* for appellant.

*Lyndon A. Smith,* Attorney General, *James E. Markham,* Assistant Attorney General, and *L. W. Prendergast,* County Attorney, for respondent.

BUNN, J.

Defendant was convicted of the crime of grand larceny in the first degree, and appeals from the judgment and from an order denying his motion for a new trial.

[1]Reported in 166 N. W. 1082.

It is contended by defendant on this appeal: (1) That the indictment did not state a public offense; (2) that the evidence was insufficient to justify the verdict of guilty; (3) that there were prejudicial errors in rulings on the admission of evidence.

1. The indictment charged that defendant, at the time and place specified, "did then and there, *being in possession, custody and control as a bailee and a person authorized by agreement to take and hold possession, custody and control* of certain personal property, to-wit: One Cole automobile, six cylinder, black in color, model of the year 1914, a more particular description of said automobile being to this grand jury unknown, and being then and there of the value of twenty-five hundred dollars, and being then and there the property of one Lyndia Denzer, *said automobile being so held by said Laurie Marx for storage and care in accordance with an agreement theretofore entered into by and between said Laurie Marx and said Lyndia Denzer, a more particular description of which said agreement is to this grand jury unknown,* did then and there unlawfully, wilfully and feloniously and with intent," etc., etc., "appropriate said property to his own use."

The point made against this indictment is that it fails to state the terms of the agreement under which defendant had custody of the car as bailee, and particularly that it fails to state that the bailment was for hire. We hold the indictment good. It follows the language of the statute (G. S. 1913, § 8870, subd. 2), and sufficiently apprises defendant of the crime with which he is charged. State v. Mims, 26 Minn. 191, 2 N. W. 492, was decided under a statute which made it an essential ingredient of the offense that the property shall have been delivered to defendant for the purpose of being carried and delivered to another for hire. Under section 8870, subd. 2, it is not necessary that the bailment be for hire. We see nothing in State v. Holton, 88 Minn. 171, 92 N. W. 541, State v. Schoemperlen, 101 Minn. 8, 111 N. W. 577, or in any of the cases cited by counsel for defendant, that gives any ground for holding that the indictment here does not set out with sufficient particularity the terms of the bailment. State v. Barry, 77 Minn. 128, 79 N. W. 656.

2. Defendant conducted a garage at Le Sueur, and was the local agent for the sale of the Cole automobile. Lyndia Denzer was, in the year 1914, a young lady of 21, living with her mother and sister in Le Sueur;

she was employed in a store part of the time, and also worked as a telephone girl. Her testimony on the trial was in substance as follows: She met defendant in March, 1914. He importuned her to buy a Cole automobile; she told him that the price, $2,500, was too much for her to pay, that she had no money to pay with; defendant said that she had land, and that the bank would take a mortgage and loan her the money to buy the car; that defendant offered to give her free storage for a year at his garage; she obtained from the bank a draft for $2,500, giving a mortgage on her land, and indorsed and delivered the draft to defendant; she and defendant drove the car around town several times, defendant endeavoring to teach her how to run it; she did not succeed in learning before she went to St. Peter to work in a hospital there; the car was left in defendant's garage, with directions from Miss Denzer that defendant was not to use the car or take it out of the garage, until she was there to learn to run it. She was in St. Peter a month, before she returned to Le Sueur, and, without her consent or knowledge, defendant took the car to Mankato and sold it, receiving in payment notes for $2,530, and $300 cash.

Defendant admitted that he sold the car as stated. The controversy on the trial was over the question whether the car belonged to Miss Denzer or to the defendant. His testimony was to the effect that he tried to sell Miss Denzer a car, but that she refused to buy; that she offered to lend him money with which to buy a car, to be used as a demonstrator and then sold, she and defendant to divide the profits; that he accepted this offer, and Miss Denzer delivered the draft for $2,500 to him; that he purchased the car, used it constantly as a demonstrator, and sold it in Mankato as before stated.

Defendant's brother corroborated his story, but there was little other direct or very persuasive circumstantial evidence that bore upon the pivotal question as to who owned the car at the time defendant sold it. One story seems about as probable as the other, the improbable thing being an admitted fact, that is, the raising of $2,500 on a mortgage by this young girl, and the delivery of the money to defendant. If the car belonged to Miss Denzer, defendant was guilty of the crime charged. If it belonged to him, he was innocent of this crime. While the evidence is not wholly satisfactory, we are not prepared to say that the

jury was not justified in accepting as true the girl's version of the trans-
action. As we have reached the conclusion that there must be a new
trial for errors in the rulings on evidence, we say nothing more definite
as to the sufficiency of the evidence. Defendant's guilt was certainly
not clearly established, and a verdict in his favor would not have been
subject to criticism. We point this out for the obvious bearing it has
on the question whether the errors hereafter discussed were prejudicial.

3. Defendant's brother testified in his favor. On cross-examination
he was asked if he did not state to Miss Denzer, "that your brother
Laurie (the defendant) was a crook." The witness denied making this
statement. In rebuttal Miss Denzer was permitted over objections to
testify that defendant's brother did make the statement to her.

It was of course irrelevant to the issue of the case whether defendant
was a "crook." It was discretionary with the trial court to require the
witness on cross-examination to answer whether he had made the state-
ment, as an affirmative answer might affect the credibility of the evi-
dence he had given. But when the witness denied making the statement,
the matter being collateral and irrelevant to the issue in the case, his
answer was final, and he could not be impeached by evidence showing
that he did make such statement. This is all elementary, and well
settled in this state. Murphy v. Backer, 67 Minn. 510, 70 N. W. 799;
3 Dunnell, Minn. Dig. § 10348, and cases cited. Campbell v. Aarstad,
124 Minn. 284, 144 N. W. 956. And we are forced to hold that the
error was prejudicial, and requires that a new trial be granted.

The complaining witness was asked on cross-examination whether
during the year 1914 she had not stated to one Huberty that she had
not bought a car this year. She answered in the negative. Defendant
called Huberty as a witness; he testified to a conversation with the com-
plaining witness, but, when asked if she made the statement claimed, an
objection was sustained. The testimony was clearly admissible, if the
conversation was after the time Miss Denzer claimed to have purchased
the car from defendant. Perhaps the ruling might be sustained on the
ground that the time of the conversation was not shown. We mention
the matter in view of a second trial.

We also think that the trial court unduly limited the cross-examina-
tion of the complaining witness as to her object in consulting an attorney

in relation to a civil action against defendant. There was a long delay in beginning the criminal prosecution, and attempts in the meantime by Miss Denzer to collect the money from defendant. These facts, with the reasons and motive of the complaining witness, were proper subjects of inquiry.

Judgment and order reversed and new trial granted.