## DAWSON v. UNITED STATES.

### No. 14053.

United States Court of Appeals,
Fifth Circuit.

April 8, 1953.

Rehearing Denied May 8, 1953.

Leo Brewster, Beale Dean and Richard Owens, Ft. Worth, Tex., Monning & Monning, of Amarillo, Tex., Brewster, Pannell, Leeton & Dean, of Fort Worth, Tex., for appellant.

A. W. Christian, Asst. U. S. Atty., Frank B. Potter, U. S. Atty., and Cavett S. Binion, Asst. U. S. Atty., Ft. Worth, Tex., for appellee.

Before HOLMES, BORAH, and RUSSELL, Circuit Judges.

HOLMES, Circuit Judge.

The indictment in this case contained 24 counts. Each of the first nine charged that the appellant, at a certain time and place within the jurisdiction of the court, did willfully, knowingly, and unlawfully, steal, conceal, remove, dispose of, and convert to his own use, a certain large quantity of wheat, which was then and there the property of the Commodity Credit Corporation, an agency and instrumentality of the United States within the Department of Agriculture. Each of the remaining fifteen counts charged the same offense with reference to a certain large quantity of grain sorghum, the specific quantity as to each count being stated in pounds instead of in bushels as in the case of wheat. Having been acquitted on the first eight counts, the appellant appealed from a judgment of conviction on the remaining sixteen counts. The statute under which he was convicted and sentenced was Section 714m(c), Title 15, of the United States Code Annotated.

The appellant was the president and most active officer of the Plains Grain Company, Inc., which stored wheat and grain-sorghum for said federal agency, hereinafter referred to as the C. C. C. He contends that the evidence was insufficient to support the verdict, because it failed to show

title in the C. C. C. to the commodities described in the indictment. The contract of June the first, 1950, which appellant contends gave him an option to purchase said commodities, provided that he, doing business as Plains Grain & Storage Company, would receive and store the grain in question and would issue warehouse receipts for the same.[1] The grain was to be commingled, and the appellant was required at all times to maintain a stock of the same class, grade, quality, and quantity. The primary obligation of the warehouseman was to store, insure, load out, and ship, grain at the request of the holder of the warehouse receipts, in whom was the legal title and ownership in common of these commodities. Articles 5576, 5621, and 5627 of Vernon's Civil Statutes of Texas; Art. 5634 of Revised Statutes of Texas.

 Because of his requirement to insure the grain in his own name against loss or damage by fire, lightning, windstorm, and other casualites, appellant contends that C. C. C. recognized his ownership of the grain. A reading of the entire contract refutes this contention. It is expressly stated therein that the provision in no way limits the obligation of the warehouseman under the other provisions of the contract, and that if he insures against unspecified hazards to the grain, such insurance shall inure to the benefit of the holders of the warehouse receipts and certificates. It is not an uncommon business practice to require a warehouseman to insure property which he holds in trust for the owner. A bailee or trustee is a qualified owner, and has an insurable interest in property of a nature that gives him a right to maintain an action for insurance proceeds which are to be held in trust for the owner.

The appellant contends that the relationship between Plains Grain Company and C. C. C. was nothing more than that of debtor and creditor. His contention is that the warehouseman owned the grain and

"the C. C. C. merely owned the warehouse receipts" which were redeemable in marketable grain or in money, calculated on the market value of the grain called for in the receipts. We quote the following from his brief, pp. 42–44: "We know of no criminal action which may be taken against a person on the mere charge that he is a debtor; Article 1, Section 18, of Texas statutes [Constitution] expressly forbids such prosecution. * * * In other words, Plains Grain was required to insure in his own name, and not as a bailee. By this clause it is not permitted to disclose the interest of Commodity Credit Corporation. It must use only its name as owner, and must file any suit to collect insurance in its own name. Under such a state of the contract, as a matter of law, it would be necessary in such a suit to prove ownership to be in Plains Grain, or the policy would be unenforceable. If it insures and sues in its own name, it must prove ownership in its own name, there being no other disclosed parties at [in] interest."

 The above argument, in our opinion, is wholly untenable. As bailee, he has a qualified title to the property in storage; he may have a personal lien or claim thereon for charges due him; or he may, as in the instant case, have voluntarily agreed to insure it, the consideration for the insurance feature being included in the storage charges. Grain delivered to a warehouseman upon an agreement that it may be mixed with other grain of like kind and grade, and held for the owner, is a bailment not a sale.

A warehouseman is a bailee of a special character; a bailee is a trustee of a particular kind; they are easily distinguishable from a buyer or purchaser. The Plains Grain and Storage Company, Inc., was not a purchaser of grain under the uniform grain storage agreement of June 1, 1950, to which appellant refers in discussing this question. The manifest intention of the parties to this contract was to provide for

---

1. There are three contracts in the records as government exhibits 1, 2, and 3, in which this company is called a corporation, but in the first paragraph of exhibit 3 the warehouseman is called "Herman Dawson d/b/a [doing business as] Plains Gr. & Stg. Co." The signature to this exhibit, however, reverts to the corporate title.

the storage of grain. Its title shows that it was a storage agreement. The first paragraph thereof refers to Herman Dawson, d/b/a Plains Gr. & Stg. Co., as the "Warehouseman." The second paragraph recites that he owned the elevator or warehouse for receiving and handling the grain. The third paragraph recites that C. C. C. desires the facilities of the warehouse to be made available with respect to grain owned by or in the possession of C. C. C. The fifth provides that the grain accepted by the warehouseman shall be stored, loaded, and shipped as requested by the owner. Numerous other paragraphs in this long contract show very clearly that appellant was not making an agreement for the storage of grain to be purchased by him, and that he only held the grain in trust as bailee for the holders of the warehouse receipts.

It was not necessary for C. C. C. to make a formal demand for the return of the grain after the same had been converted by appellant. The administrative officer of the C. C. C. testified that on the dates in question no orders to load or ship were issued to Plains Grain Company by C. C. C. Nevertheless, in a signed statement, the appellant admitted to an agent of the Department of Agriculture that all of the grain and wheat held by him for the account of C. C. C. had been shipped, and that the Plains Grain Company was insolvent and had no way of meeting its obligations. From a practical point of view, any demand for the return of the stock would have been useless, and the law does not require the doing of an idle thing. Cotton v. Heimbecher, Tex.Civ.App., 48 S.W.2d 402; Meador v. Wagner, Tex.Civ.App., 70 S.W.2d 794, 799; Hicks Rubber Co., Distributors, v. Stacy, Tex.Civ.App., 133 S.W.2d 249, 252; Lang v. Harwood, Tex.Civ.App., 145 S.W.2d 945, 949; 42 Tex.Jur. 528. Cf. State v. Rieger, 59 Minn. 151, 60 N.W. 1087.

We think the verdict is amply supported by the evidence, and we find no reversible error in the record. Accordingly, the judgment appealed from should be affirmed.

Affirmed.