[File No. 5911.]

GEO. J. DAHL, Respondent, v. WINTER-TRUESDELL-DIERCKS COMPANY, a Foreign Corporation, Appellant.

(237 N. W. 202.)

Opinion filed June 15, 1931.

*Libby & Harris,* for appellant.

*Ivan V. Metzger,* for respondent.

BIRDZELL, J. This is an appeal from an order overruling a general demurrer to the complaint. The substantial allegations of the complaint are to the effect that between the dates of January 8, 1923, and October 22, 1924, the defendant was operating a grain elevator in the town of Zahl, in Williams County, North Dakota; that during this period one Ole Anderson delivered 58 bushels and 40 pounds of No. 1 wheat to the defendant, the latter issuing a storage ticket therefor; and that on certain dates thereafter, which dates are alleged, he delivered certain other quantities of wheat, likewise alleged, to the defendant, receiving storage tickets therefor, all of which storage tickets are described by date and number; that in March, 1923, Anderson indorsed and delivered to the plaintiff these storage tickets; that on October 21 and 22, 1924, Charles Kittelson delivered to the defendant, to be stored in its elevator at Zahl, 498 bushels and 117 bushels, respectively, No. 1 wheat, for which the defendant issued to Kittelson storage tickets, which are likewise described, and that thereafter in the month of November, 1924, Kittelson indorsed and delivered such storage tickets to the plaintiff; that one Ole Severtson was employed as the agent of the defendant at Zahl, North Dakota; that in the fore part of August, 1925, the plaintiff informed Ole Severtson that he desired to sell the grain represented by the storage tickets and informed Severtson that he had lost the storage tickets therefor; that in truth and in fact the plaintiff had lost the storage tickets, that thereafter Severtson informed the plaintiff that it would be necessary for the plaintiff to supply the defendant company with a surety bond in the sum of $2,000, indemnifying the defendant against any loss or damage in the event of any demand upon the company by any one else in possession of said tickets; that the plaintiff furnished said surety bond as required

and such bond was accepted and approved by the defendant company, the latter notifying the plaintiff of its approval on September 23, 1925, but that defendant company has failed and neglected to deliver to the plaintiff any duplicate storage tickets for said grain. It is alleged "that thereafter and on August 26th, A. D. 1925, this plaintiff demanded of the defendant that it purchase the said grain from him at the price of $1.49 a bushel or that it do deliver to him the said grain at Zahl, North Dakota, and that the said defendant company did thereafter neglect and refuse to either pay this plaintiff for the said grain or to deliver the same to him and that it did thereby convert the same to its own use and benefit and that, under date of September 23, A. D. 1925, it did then inform this plaintiff that it would not deliver said grain to him at Zahl but would deliver it at a further and more distant point, to-wit at Appam, North Dakota, and that it did thereby further convert the said grain to its own use and benefit and the whole thereof; that, again and under date of September 27, A. D. 1925, this plaintiff did demand of the defendant that it either pay him $1.49 a bushel for the said grain or that it do deliver the said grain back to him at Zahl, North Dakota, and that the said defendant company did flatly refuse to either deliver the said grain back to him at Zahl, North Dakota, or pay him therefor and that it did thereby further convert the said grain to its own use and benefit." It is alleged that the price of No. 1 wheat on August 14, 1925, at Zahl, North Dakota, was $1.49 a bushel and that it varied from $1.49 to $1.30 a bushel during the month of August in the year 1925; that during the month of January, 1926, the plaintiff went to Minneapolis and on or about the 4th day of January called at the office of the defendant company in Minneapolis and demanded of the said company "that it do pay to him the market price of the said grade of grain at Zahl, North Dakota, and that on said day in Zahl, North Dakota, the market price of No. 1 dark northern wheat was the sum of $1.65 per bushel but that the defendant company then and there offered to pay this plaintiff the sum of $1.51 a bushel for said grade and that this plaintiff refused to accept the same."

It is then alleged that by virtue of the premises the defendant has taken and converted to its own use and benefit the wheat represented by said lost storage tickets; that the plaintiff elects to claim as the price

therefor the sum of $1.65 per bushel, that being the market price of said grain on or about January 4, 1926; that the plaintiff has been damaged in the sum of $1,302.67. Judgment is demanded in this sum with interest from January 4, 1926.

It is not contended that the complaint states a cause of action for damages on account of the failure of the defendant to issue duplicate storage tickets upon the furnishing of the bond alleged to have been given by the plaintiff. It is not alleged that the plaintiff had demanded duplicate storage tickets and from the allegations in the complaint it appears that at the time the bond was furnished the plaintiff contemplated selling the wheat. While the terms of the indemnity bond are not alleged, it may readily be inferred from what is alleged that the bond was to indemnify the defendant in the event it purchased the grain and claim should subsequently be made by another holder of the outstanding warehouse receipts. The plaintiff alleges that it was in the fore part of August, 1925, that he communicated to the agent of the defendant his desire to sell the wheat and also informed him that he had lost the storage tickets and was in turn informed that it would be necessary for him to furnish a satisfactory indemnity bond. He alleges the furnishing of the bond and its acceptance and approval by the defendant and that he was notified of the acceptance and approval under date of September 23, 1925. Neither the date of the furnishing of the bond nor the date of the acceptance and approval is alleged, but it is a fair inference from the pleading that it was both furnished and approved about September 23rd. In no event would the defendant have been obligated to have acted upon the bond until it was found to be satisfactory or until ordered by a court of competent jurisdiction (§ 3125a14 of the 1925 Supplement to the Compiled Laws of 1913), and no court proceedings are alleged.

The allegation that on August 26, 1925, the plaintiff demanded that the defendant purchase the grain at $1.49 a bushel or that it deliver it to him at the grain elevator at Zahl, and of the neglect and refusal of the defendant to comply with that demand, does not show the breach of any obligation owing to the plaintiff by the defendant on August 26, 1925. The defendant was under no obligation to buy the stored grain. Neither was it under any obligation to deliver the grain at Zahl except upon the production of the storage tickets and the plaintiff does not

allege that he produced them but on the contrary alleges that he was then unable to produce them.

But the complaint alleges as further facts that under date of September 23rd the defendant informed the plaintiff that it would not deliver the grain to him at Zahl but would deliver it at a more distant point, to-wit, Appam, North Dakota, and that on September 27th the plaintiff demanded that the defendant either pay him $1.49 per bushel for the grain or deliver it back to him at Zahl and that the defendant refused to do either. This is after the plaintiff had been notified of the acceptance and approval by the defendant of the indemnity bond furnished. If, therefore, the acceptance and approval by the defendant of the indemnity bond obligated it to respect the rights of the plaintiff under the lost storage tickets, and if its obligations as a warehouseman required it to do either of the acts demanded, namely, pay $1.49 a bushel for the grain or deliver the grain at that time to the plaintiff at Zahl, the complaint alleges a breach of such an obligation. The terms of the storage tickets are not alleged. It may perhaps properly be assumed, then, that they comply with the statutory form (§ 3125a2 of the 1925 Supplement to the Compiled Laws of 1913). If they contain any stipulation which would bind the warehouseman (the defendant) to purchase the grain at the market price or any other price upon demand, such stipulation, being in addition to the regular warehouse receipt, should be alleged in the complaint. It would seem to be clear, then, that the complaint states no cause of action for the breach of any obligation of the defendant to purchase the grain at any particular price,—much less at a price named by the plaintiff.

Does the complaint, then, state a cause of action for the breach of an obligation to deliver the grain to the plaintiff at Zahl in accordance with his alleged demand? For the purpose of this inquiry we will assume in aid of the complaint that the indemnity bond alleged to have been furnished, received and approved, would likewise have indemnified the defendant against loss in delivering the grain to the plaintiff.

Section 3125a8 of the 1925 Supplement to the Compiled Laws of 1913 provides:

"A warehouseman in the absence of some lawful excuse provided by this act, is bound to deliver the goods upon a demand made either by

the holder of a receipt for the goods or by the depositor, if such demand is accompanied with:

"(a) An offer to satisfy the warehouseman's lien. ·

"(b) An offer to surrender the receipt if negotiable, with such indorsements as would be necessary for the negotiation of the receipt, and

"(c) A readiness and willingness to sign, when the goods are delivered, an acknowledgment that they have been delivered, if such signature is requested by the warehouseman.

"In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

The complaint in the instant case alleges facts showing that the defendant had a warehouseman's lien under the statute for the storage charges. This is a possessory lien such as would be lost to the defendant if possession should be surrendered. (Section 3125a29, 1925 Supplement to the Compiled Laws of 1913.)

Section 3125a8, quoted above, qualifies the obligation of the warehouseman to deliver upon demand by saying that he is bound to deliver "if such demand is accompanied with (a) An offer to satisfy the warehouseman's lien," and the final paragraph of the section places the burden of establishing a lawful excuse for the refusal to comply with the demand upon the warehouseman only when the demand by the holder or depositor is "so accompanied." Clearly, we think, the making of a proper demand is a condition precedent to the obligation of the warehouseman to deliver. It is expressly made so by Section 3125a8 above quoted. It is elementary in pleading that it is incumbent upon a party having the burden of performing conditions precedent to the obligation of his adversary to both allege and prove the performance of such conditions. This the plaintiff has failed to do in the instant case. Consequently, the complaint fails to allege facts necessary to put the defendant in default or to show that it had failed to perform any obligation it was under to redeliver the grain. See Hartman v. Western Cold Storage Co. 190 Ill. App. 182; Marks v. New Orleans Cold Storage Co. 107 La. 172, 57 L.R.A. 271, 90 Am. St. Rep. 285, 31 So. 671; National Dock & Storage Warehouse Co. v. United States (C. C. A. 1st) 27 F. (2d) 4; 27 R. C. L. pp. 982, 1007, 1008.

The appellant advances a further and more fundamental argument in support of the contention that the complaint is insufficient. It will be noted that no facts whatever are alleged showing any attempt to comply with the provisions of the Uniform Warehouse Receipts Act with regard to lost or destroyed receipts. The facts that are alleged in this connection show at most that the parties voluntarily made an arrangement of indemnity which was satisfactory to themselves. The appellant contends that this arrangement would not exempt the defendant from the punishment provided by § 3125a54 of the Uniform Act nor relieve the transaction of its criminal aspect should delivery be made pursuant thereto; that, therefore, until § 3125a14 is complied with no rights can be predicated upon the failure of the defendant to redeliver the grain, because this would be to predicate civil rights upon the refusal to perform a criminal act. Section 3125a14 of the Uniform Warehouse Receipts Act reads:

"Where a negotiable receipt has been lost or destroyed, a court of competent jurisdiction may order the delivery of the goods upon satisfactory proof of such loss or destruction and upon the giving of a bond with sufficient sureties to be approved by the court to protect the warehouseman from any liability or expense, which he or any person injured by such delivery may incur by reason of the original receipt remaining outstanding. The court may also in its discretion order the payment of the warehouseman's reasonable cost and counsel fees.

"The delivery of the goods under an order of the court as provided in this section, shall not relieve the warehouseman from liability to a person to whom the negotiable receipt has been or shall be negotiated for value without notice of the proceedings or of the delivery of the goods."

And Section 3125a54 provides:

"A warehouseman or any officer, agent, or servant of a warehouseman who delivers goods out of the possession of such warehouseman, knowing that a negotiable receipt the negotiation of which would transfer the right to the possession of such goods is outstanding and uncancelled, without obtaining the possession of such receipt at or before the time of such delivery, shall, except in the cases provided for in §§ 14 and 36, be guilty of a crime, and upon conviction shall be

punished for each offense by imprisonment not exceeding one year or by a fine not exceeding one thousand dollars, or by both."

The first section cited plainly gives to the owner of a lost or destroyed receipt a remedy suited to the situation for which he is largely responsible. It puts upon him the reasonable burden of furnishing satisfactory proof of the loss or destruction and giving reasonable security against the consequence of the receipts subsequently turning up in the hands of one who would have a right to the delivery of the goods. (And in the latter event the warehouseman must deliver to such person.) It does not put it wholly within the power of the depositor and the warehouseman to make any arrangement satisfactory to themselves, for the public dealing with a public warehouseman is likewise entitled to protection against spurious receipts and it is therefore made the business of a court of competent jurisdiction to see that such protection is afforded before delivery of the goods is ordered.

Counsel for the respondent argues that the remedy provided by § 14 (§ 3125a14) is merely permissive or optional and need only be resorted to where the one who claims to be the owner of the property and the warehouseman are unable to adjust the difficulty. He argues that to construe this remedy as applicable in every case where a receipt is lost would be to hold that the legislature had imposed an unconscionable burden upon any one who was unfortunate enough to lose a receipt for a small quantity of stored grain and that it is absurd to suppose that any such thing was intended. The remedy provided is simple, inexpensive, reasonable and appropriate. If the one claiming to be the owner of the property covered by the lost receipts and the warehouseman were the only parties to be considered, counsel's argument would have greater force. But, obviously, when the receipts are lost there may well be more than one claimant, and, in addition to this, the receipts may later appear in the hands of one having a perfect right to the delivery of the goods. The statutory remedy is designed, not only to protect the warehouseman but "any person injured by such delivery," and any such person would have an action on the bond. Neither the warehouseman nor the claimant, therefore, are in a position to say what bond shall be adequate protection for any such person, and the legislature has appropriately said, therefore, that it should be approved by the court. Where the protection of third parties is so clearly in-

tended, no significance attaches to the use of the expression "may order" in referring to the action of the court. The term "may" in such connection means "shall" or "must." It has the force of a command. 25 R. C. L. 767, 768. It would seem clear, then, that before any person claiming to be the owner of property stored with a public warehouseman, which property is covered by receipts which are admittedly lost, can be in position to recover such property or hold the warehouseman for nondelivery or for conversion he must first place himself in the position of being entitled to delivery of the property, and this he can only do by satisfying the conditions of the remedy given by Section 14.

The penal provisions of § 54 of the Act are clearly applicable wherever delivery has been made in the circumstances therein stated, except in the instances covered by §§ 14 and 36, §§ 3125a14 and 3125a36 (the latter section pertaining to sale by the warehouseman to satisfy his warehouseman's lien. The statement of these exceptions, in light of the clear policy evidenced by the entire statute to protect holders of warehouse receipts, excludes all others. It has been elsewhere held that the voluntary doing of a prohibited act, such as the shipment of wheat out of the state by a warehouseman while a storage receipt therefor was outstanding, did in itself constitute the offense covered by the statute notwithstanding such act was done with the knowledge and assent of the holder of the receipt. State v. Stevenson, 52 Iowa, 701, 3 N. W. 743. Concerning the policy of such a penal statute, the Iowa court said (page 702 of 52 Iowa, 3 N. W. 743):

"If the statute in question is intended for the protection only of the person holding the receipt or voucher, it would seem that the fact that the shipment was made in his presence, with his knowledge and without any objection, would show that there could have been no intent to defraud, and no criminal responsibility. But it is evident from this whole section that it is intended for the protection of the community, as well as the protection of the holder of the voucher. It is clear that Petrie (the depositor) in this case, with the receipt in his possession, might perpetrate a fraud upon third parties, the grain not being stored with defendant as stated in the receipt. The defendant could not, innocently, under the statute, with such a receipt outstanding, ship the wheat beyond his control, even in the presence of Petrie, and with his

verbal assent. Such an act would furnish Petrie the means of perpetrating a fraud, which it is one of the objects of the statute to prevent." See also State v. Henzell, 17 Idaho, 725, 27 L.R.A.(N.S.) 159, 107 Pac. 67.

We are unable to adopt any construction of section 54 of the Uniform Receipts Act which would relieve from criminal responsibility a warehouseman voluntarily making a delivery of goods without obtaining possession of the receipt, except in the cases provided for in §§ 14 and 36 of the act. From this it necessarily follows that to hold the defendant liable under the facts pleaded in this case would be to hold it liable for not doing an act which the statute denominates a crime. For the reasons stated, the complaint fails to state facts sufficient to constitute a cause of action.

The order appealed from must be reversed. It is so ordered.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE, and BURR, JJ., concur.